John A. BROUGH and Beverly Brough,
as Husband and Wife, and
Individually, Appellants,

E. Hanlin Bavely, Trustee
in Backruptcy of John
Brough, Plaintiff,

v.

ORT TOOL AND DIE CORPORATION,
Respondent,

T.L. Design Service, Inc.,
and, Defendant,

Midwest Fluid Power Co., Respondent.

No. WD 62898.

Missouri Court of Appeals,
Western District.

Oct. 12, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 23, 2004.

Roy F. Walters, Kansas City, MO, for appellants.

Michelle R. Stewart, Overland Park, KS, for respondent, Ort Tool.

Joseph M. Backer, Kansas City, MO, for respondent, Midwest.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH and PATRICIA A. BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

John Brough and Beverly Brough, Husband and Wife, and E. Hanlin Bavely, Trustee in the Bankruptcy of John Brough, (collectively "Appellants") appeal the summary judgment in favor of Ort Tool & Die Corporation ("Ort") and Midwest Fluid and Power Co. ("Midwest") (collectively "Respondents"). Appellants' petition alleged theories of products liability against the named Respondents as a result of a severe injury sustained by John Brough when the BC–3 blow molding machine that he was using in the performance of his job allegedly malfunctioned to cause the injury. Appellants claim that the evidence is sufficient at this stage of the proceedings to raise a substantial question of fact, thereby denying the applicability of summary judgment. The judgment is affirmed.

## Factual and Procedural History

Owens–Brockway Plastic Products, Inc., a subsidiary of Owens–Illinois, employed John Brough as a bottle processor in Kansas City. He was operating a BC–3 blow molding machine at his employer's place of business when the machine malfunctioned and crushed his left arm. Mr. Brough, his wife, and the trustee in his bankruptcy proceedings were named as parties plaintiff in a petition alleging that Respondents were liable on theories of negligence, failure to warn, and strict liability for injuries Mr. Brough sustained while operating the machine and for his wife's loss of consortium.

Appellants' claims against Ort were based on the allegation that Ort negligently and defectively designed and manufactured the BC–3 machine that injured Mr. Brough thereby subjecting the company to liability. Specifically, Appellants alleged that Ort negligently or defectively designed and manufactured the interlock switch of the machine. Ort, Appellants also claimed, built the machine.

In its motion for summary judgment, Ort denied that it either designed or participated in the manufacture of the machine by which Mr. Brough sustained injury and claimed that Owens–Illinois, the parent company of Mr. Brough's employer, built the machine. The undisputed facts revealed that after the machine was built in Ohio, it was eventually moved and used in Dallas, Texas, and was finally moved to Kansas City, Missouri, the location where Mr. Brough was injured. Ort acknowledged that it disassembled the machine in Texas to facilitate its removal to Missouri and reassembled it in Missouri under the direction and control of an employee of Owens–Illinois but denied that it designed or manufactured the machine.

Appellants' claims against Midwest were based on the contention that Midwest negligently or defectively designed and manufactured the hydraulic circuitry for the

machine. Midwest asserted in its motion for summary judgment that it did not design or manufacture the BC–3 machine involved in Mr. Brough's accident but that the machine was designed by Owens–Illinois.

The trial court sustained Respondents' motions for summary judgment. The appeal followed.

## Standard of Review

Appellate review of the grant of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

## Point I

Appellants charge that the trial court erred in granting Ort's motion for summary judgment because (1) Ort's disassembly and reassembly of the BC–3 machine that injured Mr. Brough constituted "construction" of the machine within the meaning of the law applicable to the products liability theories expressed in Appellants' petition and (2) a genuine issue of material fact exists as to whether Ort manufactured the defective BC–3 blow molding machine that injured Mr. Brough.

■ Appellants first posit that Ort manufactured the machine by disassembling it in Texas for its movement to Kansas City and reassembling it in Kansas City at Mr. Brough's place of employment where he was ultimately injured. Appellants do not claim that Ort's disassembly and reassembly of the machine was negligent. Appellants claim that assembly and reassembly by Ort constituted "manufacturing" the machine subjecting Ort to liability for its defective functioning under the theories alleged in their petition. Appellants cite no authority for this position. Ort, in response to Appellants' claim, references *Mills v. Curioni, Inc.,* 238 F.Supp.2d 876 (E.D.Mich.2002), in which a products liability action was filed against Hampton Industrial Services for negligently and defectively designing and manufacturing a machine that caused injury. *Id.* at 881. Hampton's limited role included disassembling the machine, transport-

ing it, and reassembling and installing it prior to its purported defective functioning. *Id.* at 888. The court determined that Hampton did not design, manufacture, or sell the machine. *Id.* at 890. Thus, no evidence was presented that Hampton caused plaintiff's injuries, and Hampton was granted summary judgment. *Id.* Appellants' assertion that Ort's disassembly and reassembly of the machine that injured Mr. Brough constituted manufacturing the machine thereby subjecting Ort to liability for the machine's defective design or construction is rejected and does not constitute a basis for denying the motion for summary judgment.

■ The next question is whether a genuine issue of material fact exists. In its motion for summary judgment, Ort denied that it designed or manufactured the BC–3 machine that injured Mr. Brough. To support its motion, Ort offered the deposition of William Humpert. Mr. Humpert is employed by Owens–Illinois as a department manger for the BC–3 engineering group. He is reputed to be the most knowledgeable person within the company regarding BC–3 machines. He testified that Owens–Illinois designed the BC–3 machine and that the machines operate in Owens–Illinois facilities exclusively. The specific machine that injured Mr. Brough was an Owens–Illinois design that was built in an Owens–Illinois facility in Ohio by an entity hired by Owens–Illinois. Although Ort rebuilt two BC–3 machines for Owens–Illinois in the late 1990s, Ort neither built nor rebuilt the machine that injured Mr. Brough. Neither did Ort design the machine or any part of the machine, except certain mechanisms that did not affect the function of the machine

when Mr. Brough was injured.[1] Neither did Ort design the software used to operate the machine that injured Mr. Brough. The machine that injured Mr. Brough was used in several plants owned by Owens–Illinois or its subsidiaries and was ultimately shipped to the Owens–Illinois plant in Dallas, Texas. Because the machine contains hydraulic parts necessitating its disassembly before it is moved, Ort was hired by Owens–Illinois to disassemble the machine for shipment to Kansas City, Missouri. Ort moved the BC–3 machine to the Owens–Illinois Kansas City plant and reassembled it at the direction of Owens–Illinois with the assistance of Owens–Illinois plant personnel. Mr. Humpert was present in Kansas City when Ort reassembled the BC–3 machine. The machine worked correctly after reassembly, and Ort's employees departed.

Appellants claim they presented sufficient evidence in response to Ort's motion for summary judgment to raise a genuine issue of material fact. The evidence claimed by Appellants to support their allegation that Ort manufactured the BC–3 machine is (1) Ort's literature about the company that states it manufactures BC–3 blow molding machines; (2) statements made by its agent that the company manufactured the machine that injured Mr. Brough; and (3) an investigator's conclusion that Ort manufactured the machine that injured Mr. Brough.

Appellants claim Ort's literature about the company states that the company manufactured the BC–3 blow molding machine that caused Mr. Brough's injuries. Specifically, Ort's informational CD Rom and its

1. Ort admitted in interrogatory answers that it modified the labeling system of the BC–3 machine at issue from an IML 1 version to an IML 2 version. It also installed a drain back system on the machine. Appellants did not, however, allege that the defect design of these mechanisms caused the BC–3 machine to malfunction and injure Mr. Brough. Appellants' product liability theory involved the interlock switch of the machine.

web site provides, "We offer complete engineering, design, and manufacturing services to the plastic industry.... Inline blow molder with insert finish (BC–3) ... [is an example] of our work." This literature, however, does not support Appellants' position. Ort has not denied that it rebuilt two BC–3 machines in the late 1990s for Owens–Illinois. Mr. Humpert testified to this fact in his deposition. He also testified, however, that one of the machines is in storage and the other is in production at the Owens–Illinois plant in Newburyport, Massachusetts. Neither machine rebuilt by Ort for Owens–Illinois was the BC–3 machine involved in Mr. Brough's accident.

Appellants next assert that Ort's agent stated that the company manufactured the machine that injured Mr. Brough, thereby, at the very least, creating a material question of fact whether it did. Appellants attached the affidavit of Sara Sleezer to their response to Ort's motion for summary judgment. In the affidavit, Ms. Sleezer stated that Charlie Ferro, a salesman at Ort's Chicago office, told her in a telephone conversation that Ort manufactures BC–3 machines; Ort contracted with an unidentified company to build the BC–3 machine; and Ort designed the machine.

In a deposition taken a month after she signed her affidavit, Ms. Sleezer, a paralegal employed by the law firm representing Mr. Brough, again stated that she spoke by telephone to Charlie Ferro, and he said that an unidentified company submitted its need to Ort for a two liter plastic bottle making machine, Ort designed one for the company, the unnamed company was the owner of the design, and Ort is not able to reproduce the same machine for any other company. Ms. Sleezer admitted that the BC–3 machine was never mentioned in the conversation, she was unaware whether Mr. Ferro was referring to the BC–3 machine in their conversation, and she has no knowledge whether Ort built the machine that injured Mr. Brough.

Mr. Ferro's affidavit was also filed. He claims no recollection of speaking to Sara Sleezer. He has no experience with the BC–3 machines, and he knows nothing about the machine that injured Mr. Brough. The dialogue between Ms. Sleezer and Mr. Ferro represented by Ms. Sleezer's affidavit and deposition and Mr. Ferro's affidavit are insufficient to raise as material question of fact whether Ort manufactured the machine that injured Mr. Brough.

Finally, Appellants rely on the affidavit of Robert Brady, a former employee of Owens–Brockway who conducted an investigation of Mr. Brough's accident and injury, to argue that a genuine issue of material fact exists. In his affidavit, Mr. Brady stated, "It was my conclusion that the BC–3 machine that caused Mr. Brough's injuries was made by Ort because the machine's nameplate had Ort printed as the manufacturer." Ort employee Robert Beer affirmed in his affidavit that the plate referenced by Mr. Brady, the only plate on the machine that identified Ort, is on the injection head assembly and the neck ring assembly, which were supplied by Ort and which were, undisputedly, unrelated to the defect that caused Mr. Brough's injury. Appellants made no claim that either the injection head assembly or the neck ring assembly was defective or that either caused or contributed to cause Mr. Brough's injury. The evidence does not support that Ort did or could have designed or constructed the defective machine, and, therefore, fails to raise as a material question of fact whether Ort manufactured the machine that injured Mr. Brough. No genuine issues of material fact exist; Ort is entitled to judgment as a matter of law; and, therefore, the sum-

mary judgment was proper as to Ort Tool and Die Corporation. Point I is denied.

## Point II

■ Appellants assert in their second point on appeal that the trial court erred in granting Midwest's motion for summary judgment. Appellants' claims against Midwest were based on the contention that Midwest negligently or defectively designed or manufactured the hydraulic circuitry for the BC–3 machine that injured Mr. Brough. Midwest asserted in it motion for summary judgment that it did not design or manufacture any part of the BC–3 machine including the hydraulic circuitry. It supported its assertions with the deposition of William Humpert, an engineer with Owens–Illinois, who testified that the BC–3 machine and its component parts are Owens–Illinois designs. In response to Midwest's motion for summary judgment, Appellants argued that Midwest did participate in the design of the hydraulic circuitry of the BC–3 machine. They offered evidence that Midwest is a supplier of hydraulic circuitry, Midwest had in the past been asked by Owens–Brockway to lay out circuitry to meet the specific requirements for blow molding machines, and Midwest authored or prepared the schematic of the hydraulic circuitry of the BC–3 machine at issue in this case in 1994 by memorizing the hydraulic circuitry as it existed with the already-manufactured machine.

■ Appellants offer no legal support for their proposition that because Midwest drew the schematic for the hydraulic circuitry of the machine from the already existing machine that Midwest effectively designed the hydraulic circuitry. Failure to cite relevant authority where available, or to explain why such authority is not available constitutes abandonment of the point under Rule 84.04(d). *Gillham v. La-*

*Rue,* 136 S.W.3d 852, 862 (Mo.App. S.D. 2004). Furthermore, the undisputed evidence shows that Owens–Illinois designed the BC–3 machine including the hydraulic circuitry. Mr. Humpert testified in his deposition as follows:

Q: What is this Exhibit number 9, what is it about?

A: I know this to be a generic schematic that was developed for rebuilt machines.

Q: This would be the plan for rebuilt machines?

A: Yes.

Q: Is this an ORT plan?

A: It's shown drawn or done by Midwest Fluid Power, so it would not be an ORT plan.

Q: This is the design of who?

A: This is a duplication of what I would say is years and years of O–I [Owens–Illinois] machines. This mold circuit is the same mold manifold that's existed for years, and that thing had a manifold that goes back way beyond probably into the '80's, where this print is from '94. So I would see this as kind of a conglomeration of years of design, no particular one person did a particular design.

Q: This would be an Owens–Illinois design?

A: Yes, O–I commissioned.

Q: So if we take a look at Exhibit 8?

A: Exhibit 8?

Q: Yes. What is Exhibit 8?

A: This is an assembly drawing of the front safety gate enclosure.

Q: Whose design is this?

A: It's shown drawn by MW/TLD. I would view this as, once again, an O–I design put on this paper by MW/TLD.

Q: So you would have plan design schematics that might bear somebody else's

name, but, in fact, are representations of O–I designs?

A: Representations of what O–I has requested or is looking for, I would say.

Because Appellants failed to present any evidence to contradict Midwest's assertions that it did not design the hydraulic circuitry of the BC–3 machine that injured Mr. Brough, the trial court properly granted summary judgment in favor of Midwest. The second point is denied.

The judgment of the trial court is affirmed.

HOWARD, P.J. and BRECKENRIDGE, J. concur.