**CAPITAL ONE BANK, Respondent,**

v.

**Denny R. HARDIN, Appellant.**

**No. WD 64440.**

Missouri Court of Appeals,
Western District.

Sept. 13, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 2005.

Application for Transfer Denied
Dec. 20, 2005.

Denny R. Hardin, Kansas City, MO, pro se.

James M. McNeile, Leawood, KS, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

Denny R. Hardin ("Hardin") appeals an August 3, 2004 judgment of the Circuit Court of Jackson County against Hardin in favor of Capital One Bank ("Capital One"). The judgment is affirmed.

Hardin's 65–page *pro se* brief contains six points relied on. Since at least one of them challenges the sufficiency of the evidence in support of the judgment, "a detailed rendition of the evidence presented at trial is necessary. In accordance with our standard of review, the factual summary is presented in the light most favorable to [Capital One], the prevailing party at trial." *Vintila v. Drassen,* 52 S.W.3d 28, 33 (Mo.App. S.D.2001).

Capital One filed suit against Hardin on November 12, 2003, seeking recovery on a breach of contract theory for purchases and cash advances made on a credit card Capital One had issued to Hardin, as well as the associated finance charges, late payment fees, and over-limit fees he had failed to pay. Capital One's petition alleged that under the terms of the credit card agreement between Hardin and Capital One, Hardin agreed to pay Capital One for all purchases made, services rendered, and cash advanced to or for Hardin (or any other person authorized by him to use the credit card) to obtain goods, services, and credit advances. The petition further alleged that while Capital One had paid the various merchants and banks for Hardin's purchases and cash advances on his behalf, Hardin had breached the agreement by failing to timely repay Capital One for those expenditures.

Attached to the petition was an October 9, 2003 affidavit executed by Miguelle Everett, a records custodian for Capital One. According to the affidavit, after all credits and set-offs to which Hardin was entitled, the principal balance due Capital One from Hardin as of May 15, 2003 was $1,062.59. Among other things, the affidavit also stated that interest was due on this principal balance at the rate of 25.9% per annum from May 15, 2003; that this balance was not subject to further set-off, credit or adjustment for billing errors; and that upon demand by Capital One, Hardin had failed to pay the balance due without justification or excuse. Everett's affidavit further stated that under the terms of the credit card agreement, Capital One was entitled to recover reasonable attorney's fees in the amount of $159.38.

After being served with a summons and Capital One's petition by private process server on or about January 6, 2004, on January 20, 2004, Hardin entered his appearance as counsel *pro se* and filed his answer. The same day, he filed a counterclaim, which he styled as "Defendant's Petition for Damages." The counterclaim averred that Capital One was attempting, by use of fraud, misrepresentation, and deceit, to extort money from Hardin that he did not owe Capital One. After receiving a timely-requested extension of time to respond to this pleading, Capital One filed a written motion with suggestions in support to dismiss Hardin's counterclaim on March 19, 2004, in which Capital One averred that the counterclaim failed to state a claim upon which relief could be granted to Hardin due to his failure to plead the circumstances constituting the alleged fraud with particularity as required by Rule 55.15. After considering Hardin's March 22, 2004 opposition to Capital One's motion, the trial court granted Capital One's motion to dismiss Hardin's counterclaim on April 16, 2004. On the same day, the trial court also overruled Hardin's "Motion for Summary Judgement

Hearing Notwithstanding Jury Verdict," which raised essentially the same issues as Hardin's counterclaim except that its averments of fraud were based not only on Capital One's petition and supporting affidavit, but the documents Capital One had subsequently provided Hardin pursuant to his discovery requests.

The case was eventually set for trial by jury on July 19, 2004. On the morning of trial, Capital One filed a motion in limine which requested the exclusion of "any testimony or evidence [at trial] regarding all affirmative defenses and [Hardin's] previously stricken counterclaim." After a long colloquy between Hardin and the trial judge during which the trial court indicated that it was going to grant the motion and explained the specific types of evidence Hardin would be precluded from offering to the jury during trial, Hardin opted to waive his right to a jury trial. There being no objection by Capital One, a bench trial was held instead.

As he explained to the trial court before any evidence was presented, Hardin's defense theory was three-fold: (1) that he "never signed" a Card Agreement obligating him to repay Capital One for the charges and cash advances he had made on the credit card; (2) that all of the disputed amounts "were fraudulently put on the card [by Capital One] after [he] asked for a cancellation"; and (3) that under Article VI, Section 23 of the Missouri Constitution, "a corporation can't sue somebody when they don't pay their bills."

According to the transcript,[1] Capital One called only one witness at trial, a legal recovery manager for Capital One by the name of Richard Napolitano. Napolitano testified extensively concerning six exhibits, all of which had been produced to Hardin during discovery. They were: a copy of the original credit card solicitation mailed to Hardin in late August 2000 or early September 2000 (Exhibit 1); a copy of the Acceptance Certificate/Application Hardin signed on September 15, 2000 and mailed to Capital One (Exhibit 2); a copy of a Customer Agreement dated 2002, which contained the contract terms and conditions associated with Hardin's credit card (Exhibit 3); a copy of the Billing Rights Summary associated with Hardin's credit card account (Exhibit 4); a copy of all of the credit card billing statements sent to Hardin by Capital One over the active history of his account, which was the period from September 26, 2000 through May 14, 2002 (Exhibit 5); and a copy of a Control System History Report which identified various processes that occurred over the history of Hardin's account, including the results of telephone conversations between Hardin and Capital One's customer service representatives (Exhibit 6).

Hardin did not object to the admission of Exhibits 1, 2, 4, 5, or 6 as business records of Capital One. However, he did object to the admission of Exhibit 3 on the ground of relevance, arguing that it was dated some two years after Capital One issued his credit card. The trial court sustained the objection, noting that Capital

---

1. Hardin's brief explicitly states that "[t]he facts of this day will be given from the Appellant's point of view." For this and other reasons, before submission of this cause, Capital One filed a motion, which we took with the case, requesting that Hardin's appeal be dismissed for his failure to comply with several different provisions of Rule 84.04, including those governing the statement of facts (Rule 84.04(c)), the points relied on (Rule 84.04(d)), and the argument (Rule 84.04(e)) contained in an appellant's brief. While Capital One's complaints appear to be well founded, in the interest of deciding this appeal on its merits rather than dismissing it on procedural grounds, we have done the best we can to decipher Hardin's brief, albeit with considerable difficulty.

One was free to attempt to lay a proper foundation for its admission. Shortly thereafter, Napolitano testified that even though Exhibit 3 was dated 2002, "with respect to the terms and conditions and with respect to usage of the card, interest rates, interest calculation and default, et cetera," it was "virtually identical ... to the account agreement" in effect in 2000, when Hardin opened his credit card account. The only difference between the two, Napolitano testified, was the addition of an arbitration clause in October 2001, which was not implicated in this case. Hardin renewed his objection, arguing that there had been no testimony that Capital One ever provided him with a copy of either the 2000 or 2002 Customer Agreements as part of the documents he received when he opened his credit card account with Capital One. The trial court then stated that it would defer ruling on Hardin's renewed objection until it heard further testimony on that issue. Napolitano proceeded to testify that throughout the twenty-four years he had been employed by Capital One and its predecessors, it had always been company policy to enclose the Customer Agreement in the same envelope containing the credit cards themselves, and that "a copy of the cardholder agreement is sent to every person that is approved for a credit card." This time, Hardin objected that since Napolitano did not testify that he personally mailed Hardin a copy of the 2000 or 2002 Customer Agreements, Napolitano's testimony was "hearsay testimony on what other" Capital One employees might have done, noting that he (Hardin) denied ever having received a Customer Agreement of any kind. Hardin's hearsay objection was overruled and Exhibit 3 was admitted into evidence.

Napolitano testified about Capital One's policies on credit limits, finance charges, monthly membership fees, cash advance fees, late payment fees, over-limit fees, returned check fees, account cancellation and default, as well as Capital One's right to recover reasonable attorney's fees and prejudgment interest in the event of default, all of which were detailed in the Customer Agreement. He testified that Hardin made his last payment to Capital One on October 15, 2002, after which the remaining balance on his credit card account was $581.05, which was $81.05 over his $500 credit limit. Napolitano stated that due to accumulated finance charges (at the rate of 25.9% per annum applied to defaulted accounts such as Hardin's) as well as late payment and over-limit fees, which Hardin repeatedly advised Capital One he would refuse to pay but were nevertheless authorized under the terms of the Customer Agreement, this balance had increased to $1,062.59 as of May 15, 2003.

Hardin's billing records demonstrated that several of the over-limit and late payment fees he was charged by Capital One over the history of his account were later credited back to him prior to Hardin's last payment to Capital One on October 15, 2002. During his cross-examination of Napolitano, Hardin attempted to establish that these must have been billing errors, but Napolitano explained that there was "a multitude" of other possible reasons for this, including that "a payment may have crossed in the mail, therefore Capital One felt it reasonable to issue a credit." Exhibit 6 (the Control System History Report for Hardin's account) confirmed this, as it indicated that on at least two occasions, Capital One's customer service representatives had telephonically agreed to issue him $25 credits for otherwise valid over-limit and late payment fees in order to maintain "customer good will." On redirect, Napolitano testified that such credits were not always indicative of billing errors and it was possible for Capital One to give a cardholder a credit for a late

charge or over-limit charge as a courtesy, including when a customer calls and complains about such charges.

During his case in chief, Hardin reiterated that he shouldn't have to pay Capital One anything "because no agreement exists," and noted that Napolitano admitted not having any personal knowledge that Hardin ever received one by mail. After acknowledging that he had negotiated with Capital One to receive a credit for some of the over-limit and late fees, Hardin testified that because Capital One refused to correct all of the numerous billing errors it was making, he "had no course of action but to stop paying on the card." Hardin's theory was that once he stopped using the card in late September 2002, he was no longer obligated to pay finance charges, over-limit fees, or late fees on the remaining balance, further explaining that he was willing to pay Capital One $500 "to take care of the matter."

Hardin subsequently conceded that Exhibits 1 and 2 both disclosed information concerning "the miscellaneous fees that Mr. Napolitano testified about." In particular, they provided that the over-limit and late fees would both be $25. Hardin admitted that Exhibit 2 was "part of the original mailing package" he received from Capital One, that he had signed and returned it to Capital One, and that he was "aware that there were fees under some circumstances." In pertinent part, Exhibits 1 and 2 also stated, immediately above the signature line: "I have read the Important Disclosures and Miscellaneous Information on the back of the letter and agree to be bound as specified therein."

At the conclusion of Hardin's case, the trial court took judicial notice of and permitted Hardin to make legal arguments concerning at least five separate provisions of the Missouri Constitution he claimed absolved him of any contractual liability for his unpaid credit card account debt.

On August 3, 2004, the trial court rendered judgment against Hardin and in favor of Capital One in the principal sum of $994.59,[2] together with the sum of $304.18 in prejudgment interest at the contractual rate of 25.9% per annum from May 15, 2003 through July 19, 2004, with interest continuing to accrue from and after July 19, 2004 at the contractual rate of 25.9% per annum until Hardin's credit card account debt is paid in full. The trial court also awarded Capital One attorney's fees in the sum of $159.38, special process server fees, and the costs of its action. Hardin's timely-filed appeal followed.

Appellate review of this court-tried civil case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Accordingly, we will affirm the trial court's judgment against Hardin "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. Moreover, in a court-tried case such as this, the "credibility of the witnesses and the weight to be given their

2. The record shows that the trial court awarded Capital One the principal amount of $994.59 rather than the $1,062.59 prayed for by Capital One in its petition because it found that Capital One failed to adduce any evidence it had disclosed to Hardin that the over-limit and late fees were going to be increased from $25 (the charge specified in Exhibits 1 and 2) to $29 (the charge which, according to Hardin's billing statements, apparently took effect some time in October 2001). In response to a question from the court at the close of the evidence concerning this $68 discrepancy, counsel for Capital One conceded that although he believed Hardin had received such notice, he "did not have any evidence at this time to show that, in fact, a notice had been sent to Mr. Hardin on the change in the fees."

testimony are matters for the trial court, which is free to believe none, part, or all of the testimony." *Norris v. Nationwide Mut. Ins. Co.,* 55 S.W.3d 366, 369 (Mo.App. W.D.2001). "An appellate court also defers to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence." *In the Interest of A.H.,* 9 S.W.3d 56, 59 (Mo.App. W.D.2000). Furthermore, where, as here, neither party has requested findings of fact on a particular disputed issue and none are made as to that issue, "we can assume that the trial court made factual findings consistent with its judgment." *Fitzwater v. Fitzwater,* 151 S.W.3d 135, 137 (Mo.App. W.D.2004).

██ Hardin's first point relied on reads: THE TRIAL COURT ERRED IN IS-SUEING [sic] A "JUDGMENT" IN FAVOR OF AN "ERRONEOUS PETITION" FILED BY THE RESPONDENTS WITHOUT A "CUSTOMER AGREEMENT". BECAUSE THE CONSTITUTION OF MISSOURI ARTICLE I, SECTION 8 GRANTS EVERY INDIVIDUAL THE RIGHT TO COMMUNICATE WHATEVER HE WILL AND ESTABLISHES RESPONSIBILITY FOR ALL ABUSES OF THAT LIBERTY, IN THAT THE RESPONDENTS ARE RESPONSIBLE TO PROVE THE ALLEGATIONS OF THEIR PETITION. THE RESPONDENTS HAVE VIOLATED RULE 4–8.4(C) FOR FILING AN "AFFIDAVIT", "AGREEMENT" AND "PETITION" OF "FRAUD" IN THE COURT. THIS IS REVERSIBLE ERROR BECAUSE THE "JUDGMENT" IS NOT SUPPORTED BY ANY EVIDENCE OF MATERIAL FACT.

As best we can tell from this point and the relevant portions of the argument section following it in his brief,[3] Hardin is complaining that the trial court's judgment was not supported by substantial evidence because Capital One failed to prove all of the allegations of its petition in that Capital One presented insufficient evidence of a valid Customer Agreement authorizing Capital One to charge him the finance charges, over-limit fees, and late fees he was assessed by Capital One.

██ As demonstrated by the facts set forth in exhaustive detail *supra,* it is abundantly clear from the record that Exhibits 1, 2, and 3 and Napolitano's testimony (not to mention the testimony of Hardin himself) constituted substantial evidence supporting the trial court's implicit finding that there was a valid Customer Agreement between Hardin and Capital One containing the contract terms and conditions associated with the credit card, which was both received and accepted by Hardin. Moreover, although Capital One did not introduce into evidence a copy of the 2000 Customer Agreement received and accepted by Hardin, the trial court could reasonably have concluded, on the basis of Napolitano's testimony, that the 2000 Customer Agreement received and accepted by Hardin was "virtually identical" in all relevant respects to the account agreement for 2002, which was admitted into evidence as Exhibit 3. Indeed, the transcript shows (and Hardin acknowledges in his brief)

---

**3.** The argument section of Hardin's brief corresponding to Point I contains many arguments which do not relate to the errors alleged in that point. We will not consider these arguments, as they are not properly presented for our review. *See Rule 84.04(e)* (which provides, in relevant part, that "[t]he argument shall be limited to those errors included in the 'Points Relied On' "); *Schmidt v. Warner,* 955 S.W.2d 577, 584 (Mo.App. S.D.1997) ("Issues to which an appellant alludes only in the argument portion of his brief are not presented for review.") The same applies to similar extraneous arguments which appear throughout Hardin's brief as to his other five points relied on.

that the trial court expressly and specifically credited Napolitano's testimony in this regard. While Hardin claims in his reply brief that this testimony was wrongly accepted as truthful by the trial court, which should have believed his contrary testimony instead, as explained *supra*, it was up to the court to determine Napolitano's credibility and the weight to be given his testimony. Finally, although Hardin insists that the trial court improperly admitted Exhibit 3 into evidence over his hearsay objection, he cites no authority whatsoever to support his argument and has not explained why such authority is not available. Accordingly, pursuant to Rule 84.04(d)(5), we deem this argument to have been abandoned. *Brough v. Ort Tool & Die Corp.*, 149 S.W.3d 493, 498 (Mo.App. W.D.2004).

■ With regard to Article I, § 8 of the Missouri Constitution[4] and Rule 4–8.4(c),[5] Hardin appears to be arguing that Capital One's attorneys libeled him and committed fraud upon the trial court in violation of the Rules of Professional Conduct by knowingly adducing false evidence in support of Capital One's petition. These claims are not only facially devoid of merit, but are also wholly unsupported by the record and completely irrelevant to this appeal. Indeed, as the trial court specifically (and correctly) explained to Hardin prior to the start of trial: "The Code of Professional Responsibility is not an issue in this case. Either you owe money to Capital One Bank or you don't. The conduct of the attorneys is not at issue in this case." *See Rule 4, Note on Scope* ("The

fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.") Point denied.

Hardin's second point relied on states:
THE TRIAL COURT ERRED IN DISMISSING THE APPELLANTS PETITION FOR DAMAGES AND REFUSING THE "TRUTH OF DEFAMATION" AS AN "AFFIRMATIVE DEFENSE". BECAUSE THE CONSTITUTION OF MISSOURI ARTICLE I, SECTION 8 ALLOWS INDIVIDUALS IN ALL SUITS OF LIBEL AND SLANDER TO GIVE THE TRUTH THEREOF IN EVIDENCE, IN THAT WHEN THE APPELLANT FILED "DENIALS" OF RESPONDENT'S "AVERMENTS" THIS CAUSE WAS ESTABLISHED AS A SUIT OF LIBEL AND SLANDER. APPELLANT HAD THE NATURAL RIGHT OF EQUAL OPPORTUNITY UNDER THE LAW TO PROVE THE FACTS AND DEFEND AGAINST LIBEL AND SLANDER. THIS IS REVERSIBLE ERROR BECAUSE THE COURT VIOLATED RULE 2.03, CANNON [sic] 3B(7) AND DENIED THE APPELLANT HIS RIGHT TO BE HEARD ACCORDING TO LAW.

We discern from this point and the relevant portions of the argument section following it that Hardin is arguing that the trial court's decision to grant Capital One's motion to dismiss his counterclaim was

---

4. Article I, § 8 provides, in part, "that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for abuses of that liberty; and that in all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and in suits and prosecutions for libel the jury, under the di-

rection of the court, shall determine the law and the facts."

5. Rule 4–8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

erroneous in that it constituted judicial misconduct under Rule 2.03, Canon 3, paragraph B(7)[6] and denied him his rights, under Article I, Section 8 of the Missouri Constitution, to prove that the statements contained in Capital One's petition, supporting affidavit, and discovery responses were libelous and defamatory and to prove the truth of his denials of those statements.

For the same reasons that the Code of Professional Responsibility is not an issue in the case, as noted *supra*, the Code of Judicial Conduct, and consequently, the conduct of the trial judge, is likewise not an issue in this appeal. "This Rule 2 is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies." *Rule 2.01, Preamble.* Instead, Rule 2 "is to be construed so as not to impinge on the essential independence of judges in making judicial decisions." *Id.*

■■■ Moreover, these claims are facially devoid of merit, wholly unsupported by the record, and/or entirely irrelevant to this appeal. Accordingly, they are deemed abandoned due to Hardin's failure to cite relevant supporting authority of any kind or to explain why none was available. *Brough,* 149 S.W.3d at 498. Point denied.

Hardin's third point relied on declares:
THE TRIAL COURT ERRED IN DISMISSING ALL FACTS AND LAW PRIOR TO THE TRIAL BY JURY AND ERRED BY RULING THESE COULD NOT BE PRESENTED TO THE JURY. BECAUSE THE CONSTITUTION OF MISSOURI ARTICLE I, SECTION 8 ESTABLISHES THE "PROVINCE OF JURY" AS IN ALL SUITS FOR LIBEL THE JURY, UNDER THE DIRECTION OF THE COURT "SHALL DETERMINE THE LAW AND FACTS," IN THAT THE COURT ACTED "BIASED AND PREJUDICIAL" TO DENY THE APPELLANT A "JURY VERDICT" OF THE ISSUES OF THIS CAUSE OF ACTION. THIS IS REVERSIBLE ERROR BECAUSE THE COURT DENIED THE APPELLANT HIS RIGHT TO BE HEARD ACCORDING TO LAW IN VIOLATION OF RULE 2.03, CANNON 3B(7) AND DENIED THE APPELLANT DUE PROCESS OF LAW.

The basis for Point III is, at best, unclear. However, it appears that Hardin is arguing that the trial court erred in granting Capital One's motion in limine. It is patently obvious that the trial court's ruling on this motion was entirely correct, as Hardin's counterclaim for fraud had previously (and properly) been dismissed and the record plainly shows that Hardin's answer to Capital One's petition pled no affirmative defenses. *See Brizendine v. Conrad,* 71 S.W.3d 587, 593 (Mo. banc 2002). Point denied.

Hardin's fourth point relied on reads:
THE TRIAL COURT ERRED BY FAILING TO COMPLY WITH THE LAWS OF THE STATE OF MISSOURI AND THE SUPREME COURT RULES THAT GOVERN JUDICIAL CONDUCT. BECAUSE RULE 2.03, CANNON 2(A) REQUIRES A JUDGE TO RESPECT AND COMPLY WITH THE LAW, IN THAT THE LAWS GOVERNING THIS CAUSE OF ACTION WERE PRESENTED, DENIED, DISMISSED AND RULED INADMISSIBLE BY THE JUDGE WHO

---

**6.** Rule 2.03, Canon 3, paragraph B(7) states, in part: "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."

ACTED WITH MALICE, INTENT AND KNOWLEDGE TO VIOLATE THESE LAWS. THE ATTORNEYS OF RECORD VIOLATED RULE 4–8.4(f) BY MANIPULATING THESE VIOLATIONS, BUT THE FINAL JUDGMENT WAS SIGNED BY THE JUDGE. THIS IS REVERSIBLE ERROR BECAUSE A COURT WITHOUT LAWS HAS NO AUTHORITY OR JURISDICTION TO ISSUE ANY "JUDGEMENT".

In this Point, Hardin seems to be arguing that the trial court erred and committed judicial misconduct in: (1) dismissing his counterclaim; (2) overruling his motion for summary judgment; and (3) granting Capital One's motion in limine. However, as we observed *supra*, neither the Rules of Professional Conduct nor the Code of Judicial Conduct have anything to do with this appeal. Moreover, we have already held that the trial court did not commit any legal error in deciding any of those issues against Hardin. Point denied.

Hardin's fifth point relied on asserts:

THE TRIAL COURT ERRED BY GRANTING THE RESPONDENTS A JUDGMENT OF VALUE WITHOUT AN AUTHENTIC CUSTOMER AGREEMENT IN VIOLATION OF APPLICABLE LAWS. BECAUSE THE CONSTITUTION OF MISSOURI ARTICLE VI, SECTION 23 PROHIBITS GRANTING A THING OF VALUE TO OR IN AID OF ANY CORPORATION, IN THAT THE CORPORATION AND ATTORNEYS OF RECORD HAVE CONSPIRED TO VIOLATE THE NATURAL RIGHTS OF APPELLANT AND THE LAWS OF THIS STATE FOR THEIR FINANCIAL PROFIT. THIS IS REVERSIBLE ERROR BECAUSE THE JUDGMENT IS NOT SUPPORTED BY ANY LAW OR EVIDENCE OF FACT AND LACKS THE CUSTOMER AGREEMENT TO SHOW A BINDING RELATIONSHIP BETWEEN THE LITIGANTS.

Although expressed much more clearly this time around, part of Point V raises the same issue as Point I. As that issue has already been ruled against him, we proceed to consider the remainder of Point V, in which Hardin argues that the trial court's judgment in favor of Capital One was erroneous because Article VI, § 23 of the Missouri Constitution "prohibits granting a thing of value to or in aid of any corporation."

■■■ As to this aspect of Hardin's appeal, the transcript is particularly revealing:

MR. HARDIN: You said you would give me a chance to discuss the law.

THE COURT: I will let you do that. Step down and tell me what portions of the Constitution you want me to take judicial notice of.

(Mr. Hardin left the witness stand.)

MR. HARDIN: I have mine earmarked, Your Honor. I believe Article VI, Section 23 applies in this case directly. It [Capital One] is a corporation seeking a judgment of value from this Court. In Article VI, Section 23, it states: "No county, city or other political corporation or subdivision of the state shall own or subscribe for stock in any corporation or association, or lend its credit or grant public money or thing of value to or in aid of any corporation, association, or individual, except as provided in this constitution." I contend it is not allowed for a corporation to come before this Court and seek a judgment of value against me.

THE COURT: Do you have any case law that says, interpreting this provision of the Missouri Constitution, that corpo-

rations are prohibited from suing people for money?

MR. HARDIN: I have under federal law, Your Honor, that a corporation is an artificial person without rights.

THE COURT: Well, but my question for you is: Do you have any case law?

MR. HARDIN: Of this particular one, no, I do not, Your Honor.

THE COURT: All right. Well, I'll take judicial notice of the provision of the Constitution you're talking about.

As Hardin's brief likewise contains no relevant supporting authority for his position, we deem this claim, which also happens to be facially devoid of any merit whatsoever, to have been abandoned. *Brough*, 149 S.W.3d at 498. Point denied.

Hardin's sixth and final point relied on states:

THE TRIAL COURT ERRORED BY "COOPERATING" WITH THE ATTORNEYS OF RECORD TO "ABOLISH" THE CONSTITUTION OF MISSOURI. BECAUSE THE CONSTITUTION IS THE "SUPREME LAW" OF THIS STATE AND THE JUDGE WAS READ PASSAGES THAT PROHIBIT THE ACTS BEING CARRIED OUT IN COURT, JUDGE MANNERS "ABOLISHED" THE CONSTITUTION FOR THE ATTORNEYS AND ESTABLISHED THE "MISSOURI TERRITORY" AND WITHOUT THE LAW, "AUTHORITY" OR "JURISDICTION" SANCTIONED THE ILLEGAL ACTS OF THE CORPORATION. BECAUSE OF THE CONDUCT OF JUDGE MANNERS THE "STATE OF MISSOURI" HAS FAILED TO EXTEND "NATURAL RIGHTS" TO ONE OF ITS CITIZENS AND FAILED IN ITS CHIEF DESIGN.

As to this aspect of Hardin's appeal, the transcript once again gives a clear indication of the constitutional arguments he made at trial, and the admirable patience exercised by the trial judge:

MR. HARDIN: Article VII, Section 11, is an oath of office that all civil authorities are bound by—an oath of office to defend and uphold this Constitution. We come to Article III, Section 40, Your Honor. It states that the General Assembly is prohibited in [subsection] number 25, legalizing the unauthorized or invalid acts of any officer or agent of this State or of any County or municipality. [Subsection] 28 states that the General Assembly is prohibited from granting any law granting to any corporation or association or individual any special or exclusive right, privilege or immunity, or to any corporation, association or individual the right to lay down a railroad track.

THE COURT: What do railroad tracks have to do with this case?

MR. HARDIN: Nothing. But granting them the right or privilege to come before this Court to seek a judgment is in violation of the Constitution.

THE COURT: How is that any different than the right of individuals to come to Court?

MR. HARDIN: Individuals have rights, corporations don't.

THE COURT: Well, I disagree with your interpretation of the law. Do you have any other provisions you want me to take notice of?

MR. HARDIN: Yes. Article XI, Section 3. Article XI, Section 3 is the primary motivation of the attorneys before the Court today, and that is to exercise the police powers of this State on behalf of this corporation to seize my private assets. I believe there would be a gross violation of my Fourth Amendment right to be free of seizure.

THE COURT: Anything else?

MR. HARDIN: The corporation, as used in this Article, shall be construed to include all joint stock companies and associations having any powers or privileges not possessed by individuals or partnerships. And I believe Capital One Bank falls directly under these laws.

THE COURT: Anything else?

MR. HARDIN: Oh, yes. The Constitution of Missouri, Article I, Section 28 prohibits the taking of private property for private use. Since this a corporation, I contend it's taking my money for its own use. Other than that, I have nothing else, Your Honor.

THE COURT: All right.

Hardin's brief contains no relevant supporting authority of any kind for his various constitutional arguments, which are also facially devoid of any conceivable merit. Since Point VI has been abandoned, it is denied as well. *Id.*

■ Ordinarily, our analysis would end here, but, pursuant to Rule 84.19, Capital One has requested an award of damages against Hardin for prosecuting a frivolous appeal.[7]

■ Rule 84.19 states: "If an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." While there is "no hard and fast rule as to what constitutes a frivolous appeal ... and the issue must be considered on a case-by-case basis, the test generally used is whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *Vanschoiack v. Adkins,* 854 S.W.2d 432, 435 (Mo.App. W.D.1993). To put it another way, "[t]he issues presented on appeal must be at least fairly debatable in order to avoid assessment of damages for frivolous appeals." *Id.; see also Woodley–Griggs Boiler Repair, Inc. v. Sanders,* 626 S.W.2d 410, 413 (Mo.App. W.D.1981). In applying this standard, "the focus should be upon the prospect for success of an appeal considering the record made in the trial court," which "may disclose that an appellant in the trial court raised issues wholly unsupported by the facts or obviously contrary to legal principles. Such actions in the trial court are relevant as bearing upon the appellant's evaluation of the prospects of the success of an appeal." *Burns v. DeWitt & Assoc., Inc.,* 826 S.W.2d 884, 888 (Mo.App. S.D.1992).

■ The purpose of sanctions under Rule 84.19 is two-fold: "(1) to prevent congestion of appellate court dockets with meritless cases which, by their presence, contribute to delaying resolution of meritorious cases and (2) to compensate respondents for the expenses they incur in the course of defending these meritless appeals." *Johnson v. Aldi, Inc.,* 971 S.W.2d 911, 912 (Mo.App. E.D.1998). Nevertheless, "[w]e will award damages under Rule 84.19 only with great caution lest we chill others from filing meritorious appeals." *Id.* at 912. Therefore, "[a]warding dam-

---

7. Capital One requests this relief at the conclusion of its brief. "The preferred procedure for raising the issue of a frivolous appeal is by separate motion. However, Rule 84.19 grants us the authority to address the issue, regardless of the manner it is raised." *Dale v. Hardy,* 835 S.W.2d 444, 447 (Mo.App. W.D. 1992) (internal citations omitted). *See also* *Western District Special Rule XXIX* (effective April 1, 2004) (providing that although any party claiming an amount for attorney's fees on appeal "must file a separate written motion before submission of the cause," Rule XXIX "shall not apply to claims for damages under Rule 55.03 or Rule 84.19.")

ages for a frivolous appeal is a drastic measure which the court reserves for those cases in which an appeal on its face is totally devoid of merit." *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 691 (Mo.App. E.D.1994).

After carefully considering all of these justifications and concerns, we can only conclude that the present appeal is an appropriate object of Rule 84.19 sanctions. As we have repeatedly observed throughout this opinion, Hardin's allegations of trial court error are utterly devoid of any precedential support, thereby wasting scarce appellate judicial resources and delaying this court's consideration of meritorious cases. *See Johnson*, 971 S.W.2d at 913; *Whitman v. Livingston*, 541 S.W.2d 61, 64 (Mo.App. W.D.1976). Moreover, Capital One was forced to incur attorney's fees in the course of defending an unwarranted appeal which had no legitimate basis in fact or in law and was "so manifestly and palpably devoid of merit as to be completely untenable." *Nimrod v. State*, 14 S.W.3d 103, 110 (Mo.App. W.D.2000).

In reaching this conclusion, we have also taken into consideration several other case-specific factors. First, Hardin's initial brief was stricken by this court on its own motion for failure to comply with Rule 84.04 and, although we have exercised our discretion to decide the case on its merits because the issues presented were able to be deciphered, his second brief also failed to comply with Rule 84.04. *See Vanschoiack*, 854 S.W.2d at 435. We likewise note that because Hardin has had a prior civil appeal dismissed by this court since his *pro se* brief failed to comply with Rule 84.04, *Hardin v. State*, 51 S.W.3d 129 (Mo.App. W.D.2001), he is well aware of the requirements for filing a legally suitable brief.

Second, in his reply brief, Hardin does not respond to the merits of Capital One's request for damages under Rule 84.19. *See Carbray v. Floro*, 868 S.W.2d 168, 169 (Mo.App. E.D.1994) (noting, in deciding to assess sanctions in the amount of $2,000, that the appellant "has not filed any response to [respondent's] motion for damages for frivolous appeal.") Instead, he retorts that "in reality the Respondents' original petition is frivolous," alleges that Capital One's conduct "is organized crime carried out under the color of law for the financial profit of the corporation and the attorneys of record," and claims that, if the trial court's judgment was to be affirmed by this court, "the Judges of the Missouri Court of Appeals will ... join them in their criminal conduct."

Third, Hardin's reply brief makes it quite clear that he intends to pursue further (and no doubt equally frivolous) appeals, as he states: "Appellant is ready to go the distance. .... It can be done in this court or the next, or the next, but Appellant will not stop [until] this criminal fraud is stopped."

When considered as a whole, the record demonstrates that Hardin was disposed to appeal despite the fact that his claims of error were not justiciable but, instead, were "so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *Vanschoiack*, 854 S.W.2d at 435. Accordingly, Capital One's request for an award of damages against Hardin for frivolous appeal pursuant to Rule 84.19 is granted in the sum of $2,000.[8]

---

**8.** For cases involving similar circumstances, see *Presto Roofing Co. v. Hammons*, 916 S.W.2d 797, 798 (Mo. banc 1996) (awarding corporate respondent $2,000 as damages for the filing of a frivolous appeal by *pro se* appellants); *Mullen v. G.M.A.C.*, 919 S.W.2d 7, 9 (Mo.App. W.D.1996) (awarding $150 in damages for frivolous appeal where *pro se* ap-

The judgment of the trial court is affirmed in its entirety, but the cause is remanded to the trial court with directions to enter a judgment against Hardin and in favor of Capital One in the amount of $2,000 as damages for frivolous appeal. *Presto Roofing,* 916 S.W.2d at 798; *Mullen v. Kennard,* 674 S.W.2d 202, 205 (Mo. App. W.D.1984).

All concur.

pellant's petition for fraud against corporate defendant was not properly pled and was correctly subject to being dismissed under Rule 55.15 for failure to plead all the required elements of fraud with particularity and where both original and second briefs filed by appellant were deficient); *Birt v. Consol. Sch. Dist. No. 4,* 829 S.W.2d 538, 544 (Mo.App. W.D.1992) (awarding damages for frivolous appeal in the amount of $3,221 where appellant "raised claims without basis in law and contrary to well established principle and policy of the legal system"); *Swanigan v. Crockett,* 713 S.W.2d 41, 43 (Mo.App. E.D.1986) (assessing $981.83 as damages for frivolous appeal against an appellant who asserted only that the trial court should have believed the appellant rather than the respondent and argued a point directly contradicted by the appellant's in-court admissions).