(Emphasis added.) The court did not find evidence of "gross negligence or willful malfeasance," and Brown fails to show that the court erred in that determination.
*633 As the court explained, "consolidated financials were offered into evidence," and "[b]oth Trustees were subject to cross-examination, [which] afforded those interested in the Trusts an opportunity to gather additional information about Trust expenditures and demonstrate to the Court any trustee malfeasance." Moreover, the court "invited" Brown to point out "any discrepancy between the Trustees' Final Accountings and evidence presented at trial," but "no discrepancies [were] noted in Brown's response."
In short, Brown fails to establish that the court erred in approving the final accountings that were submitted by the Trustees. This Point is denied.
Brown asserts in Point VII that the trial court erred in holding that the Trustees did not breach their fiduciary duty, because the evidence
demonstrated [that] the Trustees (1) had a duty ... to expeditiously distribute to the beneficiaries in a reasonable period the trust assets ... and failed to do so, (2) failed to adhere to the terms of the trust instrument they were bound to implement by failing to expeditiously sell [two residences owned by the Trusts], thereby causing unwarranted expenses; all of which prejudiced Brown by withholding from him his rightful half of trust assets.
Under both Missouri and Florida law, to prevail on a breach of fiduciary duty claim, the claimant must show: (1) a fiduciary duty existed; (2) breach of that duty; (3) causation; and (4) harm. Matter of Wilma G. James Trust , 487 S.W.3d 37, 48 (Mo. App. 2016) ; Patten v. Winderman , 965 So.2d 1222, 1224 (Fla. Ct. App. 2007). A trustee is presumed to administer a trust in good faith, and the burden of proving otherwise falls on the appellant. Barnett , 400 S.W.3d at 49. "Generally, where a grantor vests sole discretion of a matter in a trustee, a court will not interfere in the exercise of that discretion unless the trustee willfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly, or with an improper motive." Id.
As noted in the Judgment, Brown alleged that Cooper and Brown-Thill breached their fiduciary duties to: (a) act impartially, (b) incur only reasonable costs, (c) administer prudently, (d) inform and account, (e) act loyally (i.e. , "solely in the interest of the beneficiaries"), and (f) expeditiously distribute the Trust property. The probate court examined each duty alleged to have been breached and thoroughly addressed each of them. The court then explained that
the Court has found only a relatively few occasions on which the Trustees' actions did not conform to the duties imposed on them by the [Missouri Uniform Trust Code], as modified by the ... Trust Indentures. None of the Trustees' actions noted by the Court ... suggest that the Trustees acted in a willful, wanton or malicious manner.
The court concluded that, because "[Brown] has failed to adduce clear and convincing evidence to prove [otherwise], his claim must be denied."[14]
*634 In his Point Relied On, Brown alludes to two specific matters. He first claims that the Trustees failed to expeditiously distribute the Trusts. The trial court found, however, that the delays in the distribution were warranted due to the ongoing litigation affecting the Trusts, the nature of the Trusts' assets, and the lack of cooperation by Brown. The evidence supported that finding. Brown's second claim relates to the Trustees' handling of the sale of a Kansas residence owned by the EDB Trust and a Florida condominium owned by the SLB Trust. After hearing evidence and considering the circumstances, the court found that Brown-Thill's actions with respect to the Kansas property were appropriate and not a breach of fiduciary duties. The court noted that she complied with the Arbitration Agreement's requirements for the sale of the property and that her staying at the property while she was in Kansas City provided benefits to the Trust. The probate court did not make a specific finding as to the sale of the Florida property, but it heard evidence and approved Cooper's sale of the property in the midst of trial.[15]
In denying Brown's breach of fiduciary duty claims, the probate court explained that, in a case such as this,
[w]hen a settlor vests sole discretion in a trustee and supplies no objective standards by which to evaluate the reasonableness of the trustees' conduct, a court must not interfere unless the trustee willfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly or with an improper motive in exercising such power.
The court found "no credible evidence to prove that either Trustee acted arbitrarily, fraudulently or dishonestly in their administration of the Eugene or Saurine Trusts."
Brown disregards our obligation to defer to the trial court's factual findings, given its superior position to assess witness credibility, and "to view all the evidence in the light most favorable to the result and disregard all contrary evidence." See Barnett , 400 S.W.3d at 51. Brown fails to establish that the probate court's findings on these issues were unsupported by the evidence, are against the weight of the evidence, or misapplied the law. Point denied.
In Point VIII , Brown argues that "the court erred in ruling [that Brown-Thill] did not breach her fiduciary duty, because the evidence presented to the court overwhelmingly ... proved [that] Brown-Thill, as sole trustee, engaged in self-dealing and paid herself individually from the EDB Trust monies to cover legal fees she individually incurred."
This claim apparently relates to Brown's counterclaim VI. The court noted in its Judgment that counterclaim VI
seeks an Order of this Court requiring the refund or disgorgement of previously paid attorney fees. No attorney to whom fees were paid by either the [EDB] Trust or the [SLB] Trust is a party to the instant case. Therefore, Brown's prayer that the Court order the refund or disgorgement of attorney fees previously paid must be denied. Because Thill and Cooper have no personal interest *635 in the attorney's fees paid by the Trusts, Brown bears the burden of proving that the Trustees' payment for the legal services represented by these transactions was a breach of their duty to the Trusts. Brown has failed to meet that burden.
Brown alleges that Brown-Thill breached her fiduciary duty by receiving legal expense reimbursements from the EDB Trust. As noted, however, that Trust Agreement provides that a Trustee "shall be indemnified and reimbursed" for any expense the Trustee incurs, individually or as a fiduciary, absent gross negligence or willful malfeasance. The court observed that Brown bore the burden of "proving that Cooper and Thill were either grossly negligent or committed willful malfeasance in their payment of attorney fees [and] Brown produced no credible evidence to that effect." The court found, therefore, that was it bound by that indemnification clause.
Both Missouri and Florida permit a trustee to be reimbursed for attorneys' fees incurred in the administration of a trust. § 456.7-709, RSMo ; Fla. Stat. § 736.0709. In addition, the court may award attorneys' fees and costs to any party to be paid by another party. See § 456.10-1004, RSMo ; Fla. Stat. § 736.1004 (both permitting award of attorney fees from any party and allowing fees to be deducted from any party's interest in the trust). Thus, reimbursement of legal fees to Brown-Thill in the administration of the EDB Trust is not a breach of her fiduciary duty. The court also was free to believe Brown-Thill's testimony that, when she was litigating matters in her personal capacity, she paid her own attorneys' fees. See Hawthorn Bank & Hawthorn Real Estate, LLC v. F.A.L. Inv., LLC , 449 S.W.3d 61, 65 (Mo. App. 2014). Brown fails to show that the probate court's decision in this regard was not supported by substantial evidence. Point denied.
On a related point, in Point XIV , Brown claims that the court erred in finding that Cooper did not have an attorney-client relationship with Brown-Thill "because such finding was against the weight of the evidence, in that Cooper admitted in multiple filings the existence of the relationship, and the existence of the relationship creates impermissible conflicts." Brown does not allege prejudice in his Point Relied On and does not clearly explain in his argument how he was prejudiced by this alleged error.
Cooper testified that he had not represented Brown-Thill individually at any arbitration hearing or any of the litigation proceedings between her and Brown. He said that he appeared at the arbitration hearings at the request of the arbitrator to provide expert testimony as the Estate attorney and to ascertain how the arbitrator's decision might impact the SLB Trust. The trial court was free to believe Cooper's testimony, and we defer to its factual findings. Id. Brown submitted no evidence at trial which established that Brown-Thill and Cooper had an attorney-client relationship or that Cooper provided legal services to Brown-Thill that were adverse to Brown. The probate court concluded, therefore, that "Brown's allegation [that the Trustees] breached their duty of loyalty to the EDB Trust because Cooper acted as Brown-Thill's attorney while she served as Co-Trustee of the Trust lacks any factual basis ." (Emphasis added.)
Brown fails to persuade us that the court's findings were unsupported by the evidence. Deferring to the trial court's factual findings, as we must, the probate court did not err in rejecting Brown's *636 claim of an attorney-client relationship between the Trustees. Point denied.[16]
Brown contends in Point IX that the trial court "erred in awarding the Trustees' attorney fees [because] the court found the distribution plans the Trustees' advocated for violated the prohibition against self-dealing, and therefore failed as a matter of law."
First, the probate court did not find that the Trustees' actions "violated the prohibition against self-dealing." Nor did its rejection of the Trustees' proposed distribution plan equate to such a finding.[17] This claim apparently relates to the Trustees' request for an offset to Brown's share of the Trusts' assets for "the attorneys' fees, expenses and costs which [he] unilaterally cost the [Estate] over the last three years through his litigious efforts [as to the] Estate." The probate court granted an offset of the attorneys' fees incurred in the Probate Case. Pursuant to Missouri law, and under the terms of the Trusts, the Trustees were entitled to such an offset.[18]
In its Judgment, the court noted that Brown "complains vociferously about the Trustees' failure to distribute assets from the Trusts," and yet he (1) "has taken each opportunity to thwart or ... delay" every attempt to do so, (2) intentionally interfered with the sale of property owned by the Trusts (see Point X, infra ), and (3) has "made every conceivable effort to elongate the trial of this Case." The court opined that this "is a text book example of a situation where justice and equity mandate that the Court award costs and expenses, including attorneys' fees, in a manner that will balance the benefits to the extent possible within the confines of the evidence before it." See Bugg v. Rutter , 466 S.W.3d 596, 605 (Mo. App. 2015) (attorneys' fees and costs may be awarded under "special circumstances," such as in the case of a party's intentional misconduct); Klinkerfuss v. Cronin , 289 S.W.3d 607, 618-19 (Mo. App. 2009) (same). We agree.
The probate court is empowered to satisfy any fees awarded by an offset against assets distributed from the Trusts. See § 456.10-1004. Here, the evidence supported the award of attorneys' fees and costs incurred in the Probate Case as an offset against Brown's share of the Trusts' assets. The probate court did not misapply the law or abuse its discretion in making such an award. Point IX is denied.
Brown argues in Point X :
The court erred when it awarded damages to Normand [LP], for Brown's purported disruption of the sale of 17.1 acres ... because Normand was not entitled *637 to damages ..., in that (1) the contract for the land sale was never signed between Normand and [the buyer], (2) Brown was not a general partner and had no duty to sign the contract, (3) Normand was not and could not be a party to this suit, because any disagreements between members are governed by the arbitration clause in the Normand partnership operating agreement.
The EDB and SLB Trusts have an ownership interest in an entity named Normand LP.[19] Normand previously had a partial interest in a 43-acre parcel of land in Missouri known as "Tiffany Springs." The Trustees alleged at trial that a proposed sale of approximately 17.1 acres of that property in 2014 was not completed because of Brown's interference. The probate court found that Brown "intentionally and maliciously interfered with" the sale of that property and awarded damages to the Trusts for the lost opportunity to sell the asset in the form of a $642,000 offset against Brown's share of the Trusts' assets.
It is well-established that an offset is an equitable measure within the inherent power of the courts. Helstein v. Schmidt , 78 S.W.2d 132, 135 (Mo. App. 1935). The probate court has both equitable and legal powers to adjust matters "between the parties without rigid adherence to any determined form and may shape the remedy to meet the demands of justice." See Estate of Cantonia v. Sindel , 684 S.W.2d 592, 595 (Mo. App. 1985) ; § 472.030, RSMo. Here, the probate court properly exercised that equitable power.
The evidence showed that Brown interfered with the sale of the property by refusing to consent to a partial sale, rejecting reasonable offers, and attempting to negotiate proposals without the authority to do so. As a result of Brown's actions, (1) Normand ultimately had to defend against a partition action filed by its co-owner, thereby incurring attorneys' fees, and (2) the property was eventually sold at auction for less than its appraised amount and certainly less than the amount of the sale scuttled by Brown. The probate court found that Brown's interference had cost Normand's owners $642,500. The court ordered the loss to "be allocated among the Normand partners pro-rata. [Brown-]Thill and the Trusts shall be reimbursed for their loss from Brown's Sub-Trust ... in the manner provided in Section VII of this Judgment[.]" The court ordered Brown-Thill's reimbursement to be "in the form of an outright distribution."
No money was awarded Normand. The court merely allocated trust funds from one trust to another to compensate for the losses attributable to Brown's obstreperous conduct. The court did not abuse its discretion in making this allocation. Both Brown-Thill and the Trusts were appropriately awarded an offset because each held a partnership interest in Normand at the time of the loss and were substantially harmed by Brown's actions. Point denied.
In Point XI , Brown contends that the trial court erred in denying his attorneys' fees, in that sufficient evidence established that he was entitled to such fees, because he "demonstrated [that] he was forced to respond to the Trustees' two proposed distribution plans and the court found both plans violated the prohibition *638 against self-dealing thereby failing as a matter of law."
Brown asserts no legitimate basis upon which to claim that the probate court erred in failing to award him attorneys' fees in this case. Again, the court did not find that the proposed distribution plan "violated the prohibition against self-dealing," and its rejection of the proposed plan does not automatically equate to such a finding. Second, Brown does not establish that he is entitled to his attorneys' fees in this case under the 2010 Arbitration Agreement between himself and his sister, as he suggests.[20]
As noted, the court had both legal and equitable powers to award costs and expenses and also to withhold costs and expenses due to a beneficiary's malicious conduct. Klinkerfuss , 289 S.W.3d at 619 ; Cantonia , 684 S.W.2d at 595 ; § 472.030, RSMo. The court was free to believe or disbelieve "any, all, or none of the evidence," and we defer to its factual findings. Hawthorn , 449 S.W.3d at 65. For the same reasons that the court did not err in awarding the Trustees' their attorneys' fees due to Brown's self-serving actions and interference (see Point IX, supra ), the court did not err or abuse its discretion in denying Brown his attorneys' fees. Point denied.
In Point XII Brown asserts that the trial court erred in ordering him removed as the Trustee of his own residuary trust. He asserts that "the court should not have removed him sua sponte absent an explicit finding [that he] breached the trust or committed some act authorizing the removal of a Trustee[,] in that Florida law [clearly establishes] that a trustee cannot be removed without competent substantial evidence supporting such removal." He claims that he was prejudiced because being removed as trustee "alienated him from his own Residuary Trust."
Both Missouri and Florida law allow a court, at its own discretion, to remove a trustee who has demonstrated a lack of cooperation, unfitness, or inability to effectively administer the trust. § 456.7-706, RSMo ; Fla. Stat. § 736.0706. Here, the probate court determined, "based upon Brown's testimony and the testimony of his expert, that it is necessary for 1) Brown's share of the [EDB] and [SLB] Trusts to be administered by an independent Trustee and 2) his minor children's interest to be protected by creating a separate trust share for their exclusive benefit." There was substantial competent evidence to warrant the removal of Brown as Trustee of his residuary trust because the evidence demonstrated that he was unfit and unwilling to cooperate with the administration of any trust.
As the court observed in its Judgment:
Brown testified on several occasions about needing money to fund "entrepreneurial interests." Using Trust assets for such a purpose would create an unnecessary risk to the remaindermen's share. Brown also stated on more than *639 one occasion that his children are "remaindermen and I'm the beneficiary," noting that "the trust language speaks of potential conflicts and resolves them in favor of the income beneficiary," and "if I drew income and depleted the assets, I don't believe that that would be a breach in itself." Brown's most concerning testimony came in response to cross-examination by his children's guardian ad litem when he acknowledged that he is the sole Trustee of a Trust created for him and his descendants funded with $500,000 from his parents' Trusts and none of that money remains.
In addition to Brown's own damning testimony, the court also noted that Brown's expert witness on trusts agreed that "it would be in the best interests of the beneficiaries" to appoint a corporate trustee. Moreover, the guardian ad litem asked, on the first day of trial, for "a Co-Trustee" with financial experience to be appointed for Brown's residuary trust "because his children are also beneficiaries of that trust." The court's removal of Brown as trustee of his residuary trust was supported by substantial evidence and was not a misapplication of the law. Point denied.
Brown argues in Point XIII that the court erred in dividing his residuary trust into sub-trusts because it "exceeded the court's equitable powers[,] was an improper modification of the Trust as it was not allowed by the Trust document[,] and was against the Grantor's stated intent."
We disagree. Missouri and Florida both permit such an action by the court. The applicable statutes allow the court to intervene in the administration of a trust and conduct judicial proceedings that "relate to any matter involving the trust's administration," § 456.2-201, RSMo, or "any other matters involving trustees and beneficiaries." Fla. Stat. § 736.0201.
The evidence showed that, under the terms of the Trust Agreements, Brown's minor children are current beneficiaries of the separate residuary trust created by the Grantors for him and his issue. For the same reasons that are stated in Point XII, supra , the probate court ordered that the residuary trust be divided into separate sub-trusts to protect the children and for guardian ad litem Zager to select an independent trustee to administer both sub-trusts. Brown fails to show that the probate court erred in doing so. The court's decision to divide Brown's residuary trust was supported by the evidence and complied with the law. Point denied.
Motions Taken with the Case
The parties have filed three motions which have been taken with the case. Jason Zager's "Motion for Payment of Compensation to Attorney/Next Friend" for his services as Guardian ad litem /Next Friend for the Brown children is remanded to the circuit court for its consideration, as that court is in a better position to assess the propriety of his request for attorney's fees. We deny the Trustees' two "Motion[s] to Strike" Brown's appendix to his reply brief. We note, however, that we find nothing of value to this Court in that appendix in any event.
Conclusion
It would be impossible not to notice that a shocking amount of time, money, and personal anguish has been expended as a result of the "scorched earth" approach the parties have taken in this litigation. We are of the opinion that a final conclusion will be a blessing to all concerned.
For all the foregoing reasons, we affirm the probate court's Judgment in all respects. We remand the matter back to the trial court solely for disposition of the *640 guardian ad litem 's motion for attorney's fees.
All concur.

The probate court explained in its Judgment:
The Trustees' obligation to administer the Trusts as a prudent person would is a fundamental duty and requires that the trustees consider "the purpose, terms, distributional requirements and other circumstances of the trust" in investing and distributing Trust assets, and to "exercise reasonable care, skill and caution" subject only to provisions of the governing instrument altering this standard. The ... Trust Indentures do, in fact, address this standard directly by giving the Trustee absolute discretion in investment decisions and indirectly by abrogating the Trustees' liability "for any mistake in judgment in the making or retaining of investments ... so long as any such decision is made in good faith."

Brown also makes arguments about a "failure to distribute any interim income" and a "misapplication of the indemnification clause," but neither of those issues are included in the Point Relied On; thus, we will not address them. See Fritz , 243 S.W.3d at 488 (issues raised only in the argument part of the brief and not contained in the point relied on "are not preserved for review").

Brown makes arguments about discovery, duty of impartiality, and duty to administer in good faith but does not include those issues in his Point Relied On XIV. Thus, we need not address them. See Fritz , 243 S.W.3d at 488 ("issues that are raised only in the argument part of the brief and are not contained in the point relied on are not preserved for review"). He also makes a vague reference to documents that Cooper and Brown-Thill "claim as privileged, but eventually [were] the source of post post-trial review by a Special Master." As the appointment of the Special Master was made in the Civil Case, Brown fails to demonstrate how that is even relevant to this appeal.

The court simply found that some provisions of the Trustees' proposed distribution plan could constitute a conflict of interest and, thus, would not be included in the final distribution plan.

Missouri law provides that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." § 456.10-1004. As noted, supra , the Trusts provided for reimbursement and indemnification of the Trustees.

The EDB and SLB Trusts are the general partners in Normand; Brown and Brown-Thill, individually, are limited partners. Brown-Thill and Brown each owned a 44.57% limited partnership interest in Normand at the time the loss was incurred. The EDB Trusts owned a 10.24% limited partnership interest and a .31 % general partnership interest; the SLB Trust held a .31 % general partnership interest.

Brown cites the following provision of the Arbitration Agreement:
If either party pursues any claim, dispute, or controversy against the other in a proceeding other than the arbitration provided herein, the responding party shall be entitled to dismissal or injunctive relief regarding such action and recovery of all costs, losses, and attorneys' fees relating to such action.
Instead of moving for dismissal or injunctive relief, however, Brown filed counterclaims in this case, and he had already filed his own petition in the Civil Case. In any event, Brown does not establish that this provision of that Arbitration Agreement is applicable here.