TERRY BRACKNEY, AS PERSONAL )
REPRESENTATIVE OF THE ESTATE OF )
RENATE MACK, )
 )
 Appellant, )
 ) No. SD36808
vs. )
 ) FILED: July 13, 2021
ROBERT WALKER and NANCY WALKER, )
CRYSTAL HOUSE and NATHANIEL )
HOUSE, DIRECTOR, DEPARTMENT OF )
REVENUE, STATE OF MISSOURI, and )
CENTURY BANK OF THE OZARKS, )
 )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF OZARK COUNTY

 Honorable Judge R. Craig Carter

AFFIRMED IN PART, REVERSED IN PART

 Terry Brackney ("Brackney"), a domiciliary foreign personal representative ("DFPR"),1

appeals the trial court's judgment denying his counterclaims for quiet title and constructive trust

brought on behalf of the estate (the "Estate" or "Mack's Estate") of Renate Mack ("Mack").

Brackney raises five points on appeal. Point 1 argues the trial court erred in applying the one-

year statute of limitations for the admission of a will to probate to his claims for quiet title and

1 A personal representative appointed by a non-Missouri court is a DFPR and has the power to maintain

actions on behalf of the nondomiciliary decedent's estate by filing authenticated copies of appointment by
the foreign probate court together with a copy of his official bond. See §§ 473.676 and 473.677. All
statutory citations are to RSMo. (2018).
constructive trust. Finding merit in Brackney's point 1, we reverse as to this point which

disposes of points 2 and 3.2 In points 4 and 5, Brackney argues the trial court erred in denying

Brackney's claim for constructive trust (point 4) and attorney's fees (point 5). Finding no merit

in either point, we affirm the trial court's judgment as to those claims.

 Factual and Procedural History

 This case involves a dispute over real estate in Ozark County, Missouri, (the "Property")3

between Robert Walker and Nancy Walker (the "Walkers"), Crystal House and Nathaniel House

(the "Houses"), and the personal representative of Mack's Estate, Brackney, appointed by a

court in Florida.

 Charles D. Walker, Sr. ("C.D. Walker") and Mack owned the Property as joint tenants

with rights of survivorship.4 In 1997, C.D. Walker died. Mack subsequently moved to Florida.

In 2005 or 2006, Mack began renting the Property to the Houses for $375 per month. On May

17, 2014, Mack died in Okaloosa County, Florida. After Mack's death, the Houses continued to

live on the Property but ceased paying rent.

 In July 2014, the Walkers filed an action for adverse possession and quiet title against

the unknown heirs of Mack, seeking title to the Property, and requesting service by order of

publication. In November 2014, the Missouri trial court entered a default judgment in the

2 Point 2 argues if the trial court did not err in applying the one-year statute of limitations, the trial court

erred in not joining Mack's heirs as indispensable parties. Point 3 argues that the trial court erred in
denying his claim for quiet title. The trial court did not reach the merits of the quiet title claim because it
found that Brackney's claim was barred by the one-year statute of limitations.
3 The legal description for the Property is: All of Lot 1 of Ozark Acres Subdivision as shown on the

recorded plat thereof in the Office of the Recorder of Deeds of Ozark County, Missouri, ALSO all of Lot 2
of Ozark Acres Subdivisions as shown on the recorded plat thereof in the Office of the Recorder of Deeds
of Ozark County, Missouri, EXCEPT that part of Lot 2 described as follows: Beginning at the Southwest
corner of Lot 3 of said Ozark Acres Subdivision; thence South 73 degrees 11 minutes West eleven feet;
thence in a Northwesterly direction fifty four (54) feet and ten (10) inches to a point which is eighteen (18)
feet and seven (7) inches West of the East line of said Lot 2; thence in a Northeasterly direction forty six
(46) feet and six (6) inches to a point which is eleven (11) feet West of the East line of said Lot 2; thence
North 0 degrees 11 Minutes East to the North Line of said Lot 2; thence South 83 degrees 29 minutes East
to the Northwest corner of Lot 3 of said Ozark Acres subdivision; thence South degrees 11 minutes West to
the place of beginning. All being part of the NW ¼ SW ¼ Section 5, Township 22, Range 13.
4 C.D. Walker and Mack were not married but were in a romantic relationship. The Walkers are C.D.

Walker's son and daughter-in-law. The Houses are C.D. Walker's great-granddaughter and her husband.

 2
Walkers' favor. On March 13, 2015, in the probate division of the circuit court of Okaloosa

County, Florida, Brackney was appointed as personal representative of Mack's Estate. In July

2015, the Walkers executed a general warranty deed purporting to convey the Property to the

Houses. The Houses paid $20,000.00 for the Property.5 Brackney filed a Motion to Set Aside

the Judgment in the Walkers' adverse possession case, which motion was granted by the trial

court. Pursuant to section 473.676, Brackney filed in the probate division of the circuit court of

Ozark County, Missouri authenticated copies of his appointment as the DFPR for the Estate and

a waiver of bond issued by the Florida court. Brackney later filed an amended counterclaim for

quiet title and constructive trust adding the Houses as parties in response to the Walkers' claim

for adverse possession.6

 In June 2020, a trial was held. The trial court denied the Walkers' adverse possession

claim and quiet title claim. The trial court also denied Brackney's quiet title claim and

constructive trust claim.7 In denying Brackney's counterclaims, the trial court concluded "[it]

must apply the one-year statute of limitations" finding both of Brackney's counterclaims time

barred because an estate had not been opened in Missouri within one year of the death of Mack.

On Brackney's constructive trust claim, the trial court also found "assuming arguendo that

[Brackney's] counterclaim might proceed, the evidence at trial failed to prove that [the Walkers]

deprived [Brackney] of property by fraud." Brackney appeals the trial court's judgment denying

his counterclaims.

5 According to bank records, the Property had a fair market value of $66,000 using the income analysis

approach and a value of $45,000 using the cost comparison approach. This appraisal was conducted in
June 2015.
6 The Missouri Department of Revenue and Century Bank of the Ozarks were also named as parties based

on Brackney's allegations that Century Bank had a deed of trust agreement it entered into with the Houses
and the Missouri Department of Revenue had a tax lien on the Property.
7 The trial court found:

 3. [Brackney] did not open a Missouri estate for [Mack] within one year. [Brackney] did
 file as a foreign personal representative of [Mack's Estate]. This [E]state was not opened
 within one year of the date of Mack's death[.]

 3
 Discussion

 Point 1—Statute of Limitations

 In point 1, Brackney argues the trial court erred in applying the one-year statute of

limitations for admitting a will to probate to his counterclaims for quiet title and constructive

trust. We agree. The one-year statute of limitations for applying for letters of administration to

admit a will is not the statute of limitations that applies to actions for quiet title or constructive

trust brought by a DFPR.

 Standard of Review

 "Whether or not the statute of limitations applies to an action is a question of law that

this Court reviews de novo." Drury v. Missouri Youth Soccer Ass'n, Inc., 259 S.W.3d

558, 576 (Mo. App. E.D. 2008). On questions of law, we give no deference to the trial court's

rulings. Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC, 606 S.W.3d 193,

202 (Mo. App. S.D. 2020).

 Analysis

 "Whether the statute of limitations bars a lawsuit depends on the nature of the cause of

action and when the action accrued." Cook v. DeSoto Fuels, Inc., 169 S.W.3d 94, 102 (Mo.

App. E.D. 2005). In deciding which statute of limitations applies, Missouri courts look to the

gravamen of the action. Wages v. Young, 261 S.W.3d 711, 715 (Mo. App. W.D. 2008). "[T]he

'gravamen' of the complaint or a fair reading of the complaint in its totality, should determine

[what type of cause of action is alleged] and then the applicable statute of limitations should be

applied." Id. (quoting Wenthe v. Willis Corroon Corp., 932 S.W.2d 791, 796 (Mo. App.

E.D. 1996)).

 The trial court ignored the gravamen of Brackney's actions—quiet title and constructive

trust—and mistakenly assumed Brackney was required to open a probate estate in Missouri

within one year in order to maintain the claims. With no administration pending in Missouri, a

DFPR may file authenticated copies of his appointment and bond in the probate division, which

 4
gives the DFPR "all powers of a local personal representative and [he] may maintain actions and

proceedings in this state" with the same "duties and obligations of a local personal

representative[.]"8 §§ 473.677 and 473.676. In other words, if a DFPR has filed his

authenticated copies of appointment and bond in the probate court, he does not have to open an

estate in Missouri to have the same powers as a local representative.

 Here, Brackney, the DFPR did properly file authenticated copies of his appointment and

waiver of bond in the Missouri probate court in order to maintain counterclaims on behalf of the

estate.9 Accordingly, the one-year limitation for the commencement of administration of a

decedent's estate does not control.10 Point one is granted. The resolution of point 1 renders

Brackney's points 2 and 3 moot.

8 Section 473.677 states:

 A [DFPR], who has complied with section 473.676, may exercise as to assets in this state
 all powers of a local personal representative and may maintain actions and proceedings in
 this state, subject to any conditions imposed upon nonresident parties generally. When
 acting in this state under this authority, a [DFPR] has the duties and obligations of a local
 personal representative, except that he may pay or deliver personal property under
 section 473.691.

Section 473.676 states:

 If no local administration, or application or petition therefor, is pending in this state, a [DFPR]
 may file with a probate division of the circuit court in this state, in a county in which property
 belonging to the decedent is located, authenticated copies of his appointment and of any official
 bond he has given.

9 The Walkers cite us to no statute that requires a DFPR to open an estate in Missouri within one year in

order to maintain actions on behalf of the estate. The Walkers do cite us to section 473.675, which states
"[t]he law of this state respecting proceedings, procedures and substantive rights relating in any way to
the property in this state of a nonresident decedent and its disposition, . . . shall apply as if the decedent
had been a resident of this state[.]" However, this statute does not help the Walkers' position since it
merely means Missouri law applies to proceedings relating to property in Missouri.
10 The actions brought before the trial court by Brackney were counterclaims for quiet title and a

constructive trust filed in response to the Walkers' adverse possession and quiet title claims. "An action to
quiet title is governed by the ten year statute of limitation contained in section 516.110." Basye v.
Fayette R-III School Dist. Bd. Of Educ., 150 S.W.3d 111, 115 (Mo. App. W.D. 2004). In an action to
impose a constructive trust, courts apply the statute of limitations applicable to the underlying claim
which gives rise to the imposition of the constructive trust. See e.g., Rajanna v. KRR Invs., Inc., 810
S.W.2d 548, 550 (Mo. App. W.D. 1991) (applying section 516.010's ten-year limitations to a constructive
trust action where the gravamen of the claim is title to real estate); and Dean v. Noble, 477 S.W.3d 197,
204 (Mo. App. W.D. 2015) (applying section 516.120's five-year limitations for fraud actions to the
plaintiff's claim for constructive trust where the gravamen of the claim is alleged fraud).

 5
 Point 4—Constructive Trust

 In addition to barring Brackney's constructive trust claim on the basis of the one-year

statute of limitations discussed in point 1, the trial court trial court found "assuming arguendo

that [Brackney] might proceed, the evidence at trial failed to prove that the [Walkers] have

deprived [Brackney] of property by fraud."11 In response to this ruling, Brackney's point argues

the trial court "misapplied the law" and "the decision was against the manifest weight of

evidence in that the trial court should have granted Brackney's claim for constructive trust and

awarded damages against the Walkers and the Houses and cancelled the conveyance from the

Walkers to the Houses." While Brackney's point improperly combines a misapplication-of-the-

law challenge with an against-the-weight-of-the-evidence challenge, we review ex gratia this

point and treat it as an against-the-weight challenge.12

 Standard of Review

 We will affirm the trial court's judgment unless there is no substantial evidence to

support it, it is against the weight of the evidence, or it erroneously declares or applies the

law. Ivie v. Smith, 439 S.W.3d 189, 198-99 (Mo. banc 2014). A circuit court's judgment is

against the weight of the evidence only if the circuit court could not have reasonably found, from

the record at trial, the existence of a fact that is necessary to sustain the judgment. Id. at 206.

When the evidence poses two reasonable but different conclusions, appellate courts must defer

to the trial court's assessment of that evidence. Id. Accordingly, this standard of review takes

into consideration which party has the burden of proof and that the trial court is free to believe

11 Brackney's counterclaim sought imposition of a constructive trust based on the Walker's "fraud and

omissions" in obtaining a default judgment against Mack's heirs. Brackney's prayer for relief requested
the "fair market value of the [P]roperty, the fair rental value of the [P]roperty, and interest thereon" be
held in constructive trust. Brackney did not seek cancellation of the conveyance from the Walkers to the
Houses in his constructive trust claim in his amended counterclaim. For that reason, Brackney's claim on
appeal is different than the claim he presented to the trial court.
12 "[W]e prefer to resolve appeals on their merits[.]" Bartsch v. BMC Farms, LLC, 573 S.W.3d 737,

742 (Mo. App. W.D. 2019). Where an appellant's argument is readily understandable, we have the
discretion to review non-compliant briefs ex gratia. Scott v. King, 510 S.W.3d 887, 892 (Mo. App. E.D.
2017).

 6
all, some, or none of the evidence offered to prove a contested fact, and the appellate court will

not re-find facts based on credibility determinations through its own perspective. Houston v.

Crider, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010). "A court will set aside a judgment as against

the weight of the evidence only when it has a firm belief that the judgment is wrong." Id.

(internal citations and quotations omitted).

 Analysis

 Brackney bore the burden of proof to demonstrate he was entitled to a constructive trust.

"To establish a constructive trust, an extraordinary degree of proof is required" and the

"evidence must be unquestionable in character." Fix v. Fix, 847 S.W.2d 762, 765 (Mo. banc

1993) (emphasis added). "The evidence must be so clear, cogent, and convincing as to exclude

every reasonable doubt in the mind of the trial court." Id. Constructive trusts are used by

courts to "compel one who unfairly holds a property interest to convey that interest to another to

whom it justly belongs." Brown v. Brown, 152 S.W.3d 911, 916 (Mo. App. W.D. 2005)

(quoting Kerber v. Rowe, 156 S.W.2d 925, 927 (Mo. 1941)). "[T]he touchstone for imposition

of a constructive trust is injustice or unfairness, which may take the form or be the product of

fraud (actual or constructive), abuse of a fiduciary or confidential relationship, undue influence,

or unjust enrichment." Id. at 918. Brackney has failed to meet his burden in demonstrating

that the trial court's denial of his constructive trust claim was against the weight of the evidence.

 To successfully make an against-the-weight-of-the-evidence challenge, an appellant

must perform four steps. Houston, 317 S.W.3d at 187.13 Brackney's argument skips all four

13 These steps are:

 (1) identify a challenged factual proposition, the existence of which is necessary to sustain
 the judgment;

 (2) identify all of the favorable evidence in the record supporting the existence of that
 proposition;

 (3) identify the evidence in the record contrary to the belief of that proposition, resolving
 all conflicts in testimony in accordance with the trial court's credibility determinations,
 whether explicit or implicit; and,

 7
steps in ineffectually attempting to explain why the trial court's failure to impose a constructive

trust was in error. Brackney seems to challenge the trial court's finding that he failed to prove

the Walkers engaged in fraud (e.g., "The trial court erred in assuming arguendo that [Brackney]

failed to prove the Walkers deprived Mack's Estate of the Property by fraud"). In support of his

argument, he contends that the "contradicting testimony" between Robert Walker's affidavit for

service by publication, in which he attested he "has been unable to locate an address for service

on the heirs[,]" and his trial testimony, in which he testified that he made no attempt to locate

the heirs, makes it "clear the Walkers intended to conceal the filing of their petition from Mack's

heirs and attain default judgment."

 But Brackney completely ignores our standard of review—which defers to the trial court's

superior judgment on issues of credibility—and fails to cite any favorable evidence that supports

the trial court's decision to deny the imposition of a constructive trust against the Walkers. "The

omission of material favorable evidence from the weighing process strips [Brackney's]

purported demonstration of any analytical value or persuasiveness." Id. 189.14 Brackney's

argument lacks the analytical structure necessary for the presentation of a cogent and persuasive

argument. Without such structure, reversal would require us to:

 devise and articulate [our] own demonstration of how the omitted favorable
 evidence, either by itself or considered along with the partial favorable evidence
 . . . is lacking in probative value as compared to the totality of the evidence, so as
 to be against the weight of the evidence. Such action on our part would thrust us
 into becoming an advocate on [Brackney's] behalf; a role we are prohibited from
 assuming.

 (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn
 from that evidence, is so lacking in probative value, when considered in the context of the
 totality of the evidence, that it fails to induce belief in that proposition.

Id.

14 "An argument must explain why, in the context of the case, the law supports the claim of reversible

error. It should advise the appellate court how principles of law and the facts of the case interact."
Brown v. Brown-Thill, 543 S.W.3d 620, 629 (Mo. App. W.D. 2018) (internal quotation and citation
omitted).

 8
Id. Point 4 is denied.

 Point 5—Attorney's Fees

 In point 5, Brackney argues that the trial court erred in rejecting his prayer for attorney's

fees "because as a result of the Walkers['] wrong doings [the Estate] was caused to incur said

fees in collateral litigation." In his amended counterclaim, Brackney sought attorney’s fees

"pursuant to RSMo. § 527.100"15 on his quiet title claim and "to justify the equitable balancing of

benefits" in his constructive trust claim.

 We need not address whether the collateral litigation exception16 applies because

Brackney never sought attorney's fees based on collateral litigation in his pleadings or motion

for new trial.17 "An appellate court will not, on review, convict a trial court of error on an issue

which was not put before it to decide." First Bank Centre v. Thompson, 906 S.W.2d 849,

859 (Mo. App. S.D. 1995). "Even in a court-tried case, where a post-trial motion is not necessary

to preserve an otherwise properly raised issue for appellate review, the appellant must make

some effort to bring the alleged error to the trial court's attention." Heck v. Heck, 318 S.W.3d

760, 767 (Mo. App. W.D. 2010) (internal citation omitted). Here, Brackney asks us to convict

the trial court of an error on an issue that it was never asked to decide. We decline to do so.

Brackney did not put the trial court on notice of his precise allegation of error and give the trial

15 Section 527.100 provides: "In any proceeding under sections 527.010 to 527.130 the court may make
such award of costs as may seem equitable and just." Brackney, in his amended counterclaim, cited this
statute that gives the trial court discretion to award costs (not attorney’s fees) in a declaratory judgment
action (not a quiet title action).
16 The collateral litigation exception allows a plaintiff to recover attorney fees that he expended

in collateral litigation with a third party as a result of a defendant's wrongdoing. Beavers v. McGinnis,
277 S.W.3d 308, 310 (Mo. App. S.D. 2009). "For the collateral litigation exception to be applicable, the
plaintiff must have incurred attorneys' fees in a different cause of action, involving a different party,
caused by a breach of duty by the defendant." Collier v. Manring, 309 S.W.3d 848, 853 (Mo. App.
W.D. 2010).
17 Brackney fails to include in his brief a statement of how this issue was preserved. Rule 84.04(e)

requires appellants to include in their argument for each claim of error "a concise statement describing
whether the error was preserved for appellate review[.]" Missouri Court Rules (2021). The failure to
comply with Rule 84.04(e) "preserves nothing for appellate review." In re Marriage of Fritz, 243
S.W.3d 484, 487 (Mo. App. E.D. 2007).

 9
court an opportunity to decide that issue and point 5 is, therefore, dismissed.18 See

Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC, 586 S.W.3d 329, 345 (Mo.

App. S.D. 2019).

 Conclusion

 The portion of trial court's judgment denying Brackney's counterclaim for quiet title is

reversed. The case is remanded for further proceedings on that claim consistent with this

opinion. In all other respects, the trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – Opinion Author

GARY W. LYNCH, J. – CONCURS

DON E. BURRELL, J. – CONCURS

18 Even if we did review his argument, Brackney fails to explain how the court abused its discretion in

failing to award attorneys' fees. The trial court's decision to grant or deny attorneys' fees is reviewed for
an abuse of discretion absent a contractual or statutory provision that requires attorney's fees. Tupper
v. City of St. Louis, 468 S.W.3d 360, 374 (Mo. banc 2015). "A trial court ruling is an abuse of
discretion when it 'is clearly against the logic of the circumstances then before the court and is so
unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate
consideration.'" State ex rel. Mo. Highways & Transp. Comm'n v. Boer, 495 S.W.3d 765, 769
(Mo. App. S.D. 2016) (quoting Lozano v. BNSF Ry. Co., 421 S.W.3d 448, 451 (Mo. banc 2014). Even if
we accept his argument that "it is equitable to award [Brackney] his attorneys' fees[,]" which we do not,
Brackney makes no attempt to explain how the denial of attorney's fees is so unreasonable and arbitrary
that it shocks our sense of justice.

 10