

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **RICHARD BROWN, ET AL.,** | ) | |
| | ) | |
| **Appellants,** | ) | **WD84312** |
| | ) | |
| **v.** | ) | **OPINION FILED: April 26, 2022** |
| | ) | |
| **SUSAN L. BROWN, ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Mark Anthony Styles Jr., Judge

Before Division Three: Gary D. Witt, Presiding Judge, Anthony Rex Gabbert, Judge and
W. Douglas Thomson, Judge

This appeal arises from extensive litigation between the parties regarding certain trusts and trust assets over a period of many years including multiple trips to this Court. Richard Brown ("Brown"), appearing *pro se*, appeals the judgment of the Circuit Court of Jackson County ("trial court") granting Respondent James Cooper's ("Cooper") motion to dismiss Brown's Petition to Enforce Arbitration. Brown's first appellate brief was struck for multiple, specific violations of the briefing requirements of Rule 84.04.[1] Thereafter,

---

[1] Unless otherwise indicated, all rule references are to the Missouri Court Rules (2021).

Brown filed an amended appellate brief. Cooper filed a Motion to Dismiss Appellant Richard L. Brown's Amended Appellant's Brief, wherein he also requested attorney's fees for responding to Brown's appeal. Because Brown's amended appellate brief contains significant deficiencies under our rules, we strike Brown's brief without reaching the merits of his arguments, dismiss the appeal, and we remand to the trial court for a determination of an appropriate award of attorney's fees to Cooper for the fees pertaining to this appeal. It is clear that the underlying petition and this appeal are nothing more than Brown's futile attempts to relitigate issues that he has unsuccessfully raised in multiple prior cases and appeals.

### Factual and Procedural Background

Because Brown appears before this Court for the fourth time related to the same dispute,[2] we borrow the factual background, in significant part, from *Brown v. Brown-Thill*, 543 S.W.3d 620 (Mo. App. W.D. 2018), without further attribution.[3] Brown and Susan Brown-Thill ("Brown-Thill"), brother and sister, were the beneficiaries of Trusts established by their parents, Eugene D. Brown ("Eugene")[4] and Saurine L. Brown ("Saurine")(collectively "Grantors"). The Trusts, which we refer to as the "EDB Trust" and the "SLB Trust," were "mirror trusts" with essentially identical provisions. They were established in 1989 and 1999, respectively, and were created to allow the Grantors' Estate

---

[2] *See Brown v. Brown-Thill*, 437 S.W.3d 344 (Mo. App. W.D. 2014); *Brown v. Brown-Thill*, 543 S.W.3d 620 (Mo. App. W.D. 2018); *Brown v. Brown*, 611 S.W.3d 347 (Mo. App. W.D. 2020) (per curiam).

[3] Our need to borrow from our prior opinion is due in part to Brown's failure to set forth a statement of facts in his brief that complies with Rule 84.04.

[4] Because several people referred to within this opinion share the same last name we refer to certain individuals by their first names. No disrespect or familiarity is intended.

2

to pass at their deaths to residuary trusts set up for their children and grandchildren. On January 3, 2007, the Grantors executed Restatements of their Trust Agreements. Those documents were drafted by Cooper, who had been the Grantor's estate planning attorney since 2006. The trusts are the general partners, either directly or through membership in a limited liability company, Brown Bear, for three limited partnerships, known as FLP I, FLP II, and Normand LP. The three partnerships manage the trusts' assets, including stocks, municipal bonds, and real estate.

Eugene was the sole trustee of the EDB Trust until he suffered a disabling fall in 2007, after which Saurine began serving as sole Trustee of this Trust. Following Eugene's death in May 2008, Saurine appointed Vernon Lotman (her brother) and Cooper to serve as her co-trustees on the EDB Trust. Saurine was sole trustee of the SLB Trust until July 2007, when she appointed Lotman as the sole Trustee. In April 2008, Lotman appointed Cooper as a co-trustee of the SLB Trust. After Saurine died in March 2009, Lotman and Cooper continued to serve as co-trustees of this Trust. Upon Lotman's death in 2011, Cooper became the sole trustee of the SLB Trust.

Two years later, in December 2013, after multiple rounds of arbitration proceedings initiated by Brown pertaining to the partnerships' assets, Brown-Thill and Cooper, as sole Trustees of the EDB and SLB Trusts, respectively, filed a petition in the Probate Division of the Jackson County Circuit Court ("the Probate Case"). They sought: (1) a declaration approving their proposed final distribution plans for both Trusts; (2) a declaration approving the final accountings for the Trusts; (3) an offset against Brown's share of the Estate for attorneys' fees, expenses, and costs incurred by the Trusts in defending lawsuits

3

and arbitration proceedings filed by him; and (4) an injunction enjoining Brown from bringing "further vexatious litigation" regarding the Brown Family Estate.

Along with his Answer, Brown filed a Counterclaim seeking: (Count I) damages for breach of fiduciary duty against Cooper, as trustee of the SLB Trust, and against Brown-Thill, as trustee of the EDB Trust; (Count II) damages for legal malpractice against Cooper and his law partner, Donald Friend II, individually, and their law firm; (Count III) damages for breach of investment advisor fiduciary duties against Cooper and Friend, individually, and Sentinel Wealth Advisors, LLC; (Count IV) an "immediate and equal division, distribution and termination" of the EDB Trust; and (Count VI) an injunction to prevent Brown-Thill and Cooper from paying additional fees from the Trusts and disgorgement of Trustee's fees previously paid.

The probate division of the Jackson County Circuit Court ("probate court") held a bench trial on the petition and counterclaim. Testimony was heard and evidence was presented on twenty-four non-consecutive days over the course of more than a year. At the conclusion of the trial, after eighteen witnesses and hundreds of exhibits, the probate court took the matter under advisement. The probate court thereafter ordered Cooper and Brown-Thill each to provide a final accounting for the period of their trusteeships. The Trustees timely submitted their accountings with the information requested by the probate court.

The court entered Judgment in the Probate Case, ordering a final distribution of the assets of the EDB and SLB Trusts and approving the Trustees' final accountings. The court denied the Trustees' request to enjoin Brown from bringing any additional lawsuits against

4

the Estate. The court granted the Trustees' request for a setoff against Brown's share of the assets of the Trusts for the fees and expenses the Trusts had incurred in the Probate Case resulting from the litigation initiated by Brown. The court also ordered an offset against Brown's share of the estate for damages he caused by interfering in a sale of property owned in part by Normand LP. The court further ordered that Brown be removed as trustee of the residuary trust for himself and his minor children (which would be funded by the distribution plan). To minimize the impact of the offsets on the children, the court ordered Brown's residuary trust be divided into sub-trusts for Brown and separately for his children and directed the guardian *ad litem* to select an independent trustee for each. The court denied Brown's counterclaims against Cooper and Brown-Thill for breach of fiduciary duty and his counterclaim to enjoin the payment of Trustee fees. This Court, in *Brown v. Brown-Thill*, affirmed the probate court's Judgment in all respects. 543 S.W.3d at 639. We also noted that "a shocking amount of time, money, and personal anguish has been expended as a result of the 'scorched earth' approach the parties have taken in this litigation. We are of the opinion that a final conclusion will be a blessing to all concerned." *Id.*

After this Court affirmed the judgment of the probate court, the parties began the complicated process of liquidating the trusts' assets in accordance with the approved final distribution plan. Brown refused to cooperate with this process and filed numerous motions to enforce the probate court's judgment immediately. The court dismissed his causes of action because the trustees were in the process of winding up the trusts' assets, and Brown's behavior in refusing to cooperate delayed the process significantly. This

5

Court again affirmed the judgment of the lower court dismissing Brown's latest lawsuits. *See Brown v. Brown*, 611 S.W.3d 347 (Mo. App. W.D. 2020) (per curiam).

In 2019, the trustees filed a joint motion in the probate case to ratify the proposed partnership resolution, with Brown's share of the partial distribution of Normand LP, totaling $795,498.32, to be held in trust by the probate court due to Brown's refusal to agree to the amount. The court approved the joint resolution, awarded attorney's fees and costs to the trustees, and enjoined Brown "from pursing further vexations litigation against the Trustee of the Eugene D. Brown Trust, the Trustee of the Saurine L. Brown Trust, or any other individual or entity in connection with the disposition, accounting, or handling of the assets held by the either [sic] the Eugene D. Brown Trust, the Saurine L. Brown Trust, and for such other relief as the Court deems just and equitable." Brown appealed the court's judgment, which was dismissed by this Court as untimely.

The trustees began distributing the trusts' assets in accordance with the probate court's order. Brown, however, filed a Petition to Enforce Mandatory Arbitration of Partnership Disputes ("First Petition to Enforce Arbitration") on May 22, 2019 against Brown-Thill and Cooper, in the Civil Division of the Jackson County Circuit Court. The case was transferred to the probate division and Brown-Thill and Cooper filed a motion to dismiss, which was sustained by the probate court.

On February 21, 2021, Brown filed a Petition to Enforce Arbitration ("Second Petition to Enforce Arbitration") against Cooper, which is the underlying petition in this case and makes the same claims as the First Petition to Enforce Arbitration. The trial court dismissed Brown's petition, found Brown in contempt of the vexatious litigation injunction,

6

and sanctioned Brown by awarding Cooper his costs and attorney's fees expended in response to Brown's petition. After Brown's petition was dismissed by the probate court, Brown filed a similar Petition to Enforce an Arbitration Agreement against Brown-Thill in the United States District Court for the Western District of Missouri. The federal court dismissed this cause of action based on *res judicata* because the parties had already litigated the same claims in the First Petition to Enforce Arbitration, but the federal court did not award Brown-Thill costs and attorney's fees. Brown now appeals the dismissal of his Second Petition to Enforce Arbitration by the probate court.

Brown's first appellate brief was struck for failure to comply with Rule 84.04; namely, Brown's points relied on I, II, and III were not in compliance with Rule 84.04(d) and did not include a list of cases or authority, and the argument did not contain a concise statement describing whether the error was preserved for appellate review, and if so, how it was preserved, in violation of Rule 84.04(e). After Brown filed an amended brief, Cooper filed a motion to dismiss Brown's brief for failure to comply with the briefing requirements and also requested attorney's fees associated with responding to this latest appeal.

**Analysis**

The requirements for appellate briefing are provided in Rule 84.04. An appellant's brief must contain: (1) a detailed table of contents; (2) a concise statement of the grounds on which jurisdiction of the review court is invoked; (3) a statement of facts; (4) the points relied on; (5) an argument, which shall substantially follow the order of the points relied on; and (6) a short conclusion stating the precise relief sought. Rule 84.04(a)(1)-(6). "Rule

7

84.04's requirements are mandatory." *Lexow v. Boeing, Co.*, No. SC 99199, 2022 WL 791953, at \*2 (Mo. banc Mar. 15, 2022). "Although this Court prefers to reach the merits of a case, excusing technical deficiencies in a brief, it will not consider a brief so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal." *Id.* (internal quotations and citations omitted). "A party appearing *pro se* is held to the same standards as a licensed attorney and, as such, his brief must substantially meet the requirements of Rule 84.04." *B.A. v. Ready*, 634 S.W.3d 653, 655-56 (Mo. App. W.D. 2021). "Dismissal is particularly appropriate where appellant makes no effort to correct the deficient points in his amended brief, even after being put on notice that they were inadequate." *Sharp v. All-N-One Plumbing*, 612 S.W.3d 240, 245 (Mo. App. W.D. 2020).

After having his initial brief in this appeal stricken for failure to comply with the rule regarding the requirements for points relied on, Brown's points relied on in his amended brief do not comply with appellate briefing requirements. "Where the appellate court reviews the decision of a trial court, each point shall: (A) Identify the trial court ruling or action that the appellant challenges; (B) State concisely the legal reasons for the appellant's claim of reversible error; and (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d). The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]." *Id.* "The explanation or relation between the ultimate error and the legal theory is a necessary portion of a point relied on[.]" *Waller v. Shippey*, 251

8

S.W.3d 403, 406 (Mo. App. W.D. 2008). "Without such a link, both this court and the respondents are left guessing at the nature of appellant's argument." *Id.*

Browns first point states:

> The court erred by dismissing the application to compel arbitration because a valid & broad arbitration clause exists in each partnership agreement for resolving the current dispute in that the court ignored the liberal state & federal policy which favors implementation of non-judicial settlement and discharges any ambiguities in support of enforcement.

In this point, Brown does not state any legal reason for the claim of reversible error. Instead, Brown relies on "liberal state & federal policy" without identifying a state or federal statute, regulation, or case. Further, Brown only references "liberal state & federal policy" in the section of the point relied on reserved for explaining why, *in the context of the case*, the legal reason supports the claim of reversible error. Following the "in that" clause, Brown must show "how the principles of law and the facts of the case interact." *Sharp*, 612 S.W.3d at 245. Brown, however, merely states that general public policy supports non-judicial resolution. While that blanket statement may be true, it does not aid Brown in explaining why the trial court's dismissal of his cause of action was reversible error. Accordingly, Brown's first point relied on is deficient.

Brown's second point reads:

> The court erred by precluding arbitration due to res judicata and waiver because, as the forum where partnership issues were previously heard, arbitration is generally the proper venue for further resolution and waiver is generally for the arbitrator's determination, in that the court exceeded its jurisdiction.

Here, in the portion dedicated to explaining why the legal reasons, in the context of the case, support the claim of reversible error, Brown simply states, "the court exceeded its

9

jurisdiction."  Again, Brown must explain the "relation between the ultimate error and the legal theory" that supports a claim of reversible error.  *See Waller*, 251 S.W.3d at 406. Simply saying the court exceeded its jurisdiction is insufficient, in that it says nothing about the facts of the case before the Court that, when combined with a sound legal theory, support reversal.  This is particularly true when our Supreme Court has made clear that trial courts in Missouri have original jurisdiction over all matters, both civil and criminal. *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 253 (Mo. banc 2009).  Because we cannot advocate on Brown's behalf, *see Waller*, 251 S.W.3d at 407, we must not speculate what Brown's argument may have been in relation to this point and this point is likewise deficient.

Brown's third point provides:

The court erred by altering the law of the case in which the western district affirmed the predecessor court's succinct deferral of review of the partnership entities' 'separate' transactions and also bifurcated the parties who had effect on them in that the successor court incorrectly set aside those findings.

Here, Brown's point simply does not comply with the formatting requirements of Rule 84.04.  This point lacks a "because" clause, which provides necessary support to an appellant's point relied on, in that it puts the Court on notice of the legal reason the appellant asserts support reversal of the trial court's judgment.  We recognize Brown appeals *pro se*, but "the Missouri Court of Appeals does *not* play hide-the-ball when it comes to briefing requirements and, instead, provides a detailed primer to all litigants, whether represented or unrepresented, via the public web site found at www.courts.mo.gov." *B.A.*, 634 S.W.3d

at 656. Given Brown's extensive experience of litigating before this Court, basic requirements of each point relied on should not surprise or be new to him.

In Brown's fourth point, he states:

Without qualified, transactional partnership reports before his predecessor or before him, the successor court errored by dismissing, without evidence, an inquiry into the general partner's alleged breaches of the partnership agreements and the statutes incorporated within them because the federal court has already validated the authority of an arbitrator, particularly one who is fully informed, in that the court disregarded the mandatory arbitration clause and other terms of the partnership contract as well as the arbitrator's competent jurisdiction.

Here, Brown fails to begin the point relied on by identifying the trial court ruling or action he challenges. Brown eventually identifies an allegation of error, but states the "successor court errored by dismissing, without evidence, an inquiry into the general partner's alleged breaches of the partnership agreements and the statutes incorporated within them[.]" We are unsure what Brown means by "inquiry into the general partner's alleged breaches of the partnership agreements." In this case, the trial court dismissed Brown's petition to enforce arbitration, filed long after the probate court entered Judgment in the Probate Case, ordering a final distribution of the assets of the EDB and SLB Trusts and approving the Trustees' final accountings, and that judgment had been affirmed by this Court and become final. If Brown is attempting to appeal the most recent judgment of the trial court dismissing his petition to enforce arbitration, he must identify the particular portion of the judgment he is challenging in his point relied on. "The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of the appellate courts." *Jones v. Buck*, 400

11

S.W.3d 911, 915 (Mo. App. S.D. 2013) (internal quotation omitted). Accordingly, Brown's fourth point preserves nothing for our review.

Further, as previously noted, Brown's statement of facts does not comply with Rule 84.04. "The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. All statements of facts shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." Rule 84.04(c). "A statement of facts that is argumentative does not substantially comply with Rule 84.04." *Hoock v. SLB Acquisition, LLC*, 620 S.W.3d 292, 304 (Mo. App. E.D. 2021). "Failure to meet the requirements set forth in Rule 84.04(c) is grounds for dismissal." *Gossett v. Gossett*, 98 S.W.3d 899, 901 (Mo. App. W.D. 2003). Page references are mandatory because "courts cannot spend time searching the record to determine if factual assertions in the brief are supported by the record." *Sharp*, 612 S.W.3d at 245.

Here, roughly half of the statements of fact set forth in Brown's statement of facts lack any citation to the extremely voluminous legal file. The format in which Brown submitted the legal file, a 2,169-page record without reference to individual documents, highlights the importance of citation to the record for every sentence in the statement of facts. Without citations, Respondents and the Court are left searching for a needle in a haystack, or more specifically, searching for a particular needle in a stack of needles. Similar to *Sharp*, in which "numerous statements" were without any citation at all, "[t]his is completely insufficient in that it essentially requires the court to improperly speculate on the facts." *See id.* Further, many of Brown's statements of fact are argumentative,

12

conclusory, and simply recite Brown's version of events that led him to file a petition to enforce arbitration. For instance, Brown states, "[Cooper] has obstructed a legitimate review of his effect as a general partner on the values of the assets held within the Partnerships, which on its face appears to be damaging." Brown also dedicates a significant portion of the statement of facts quoting and arguing the substance of the partnership agreements, as well as the type of accounting methods the court should have utilized in the 2015 probate case, which has long since been final and not subject to further review. This is inappropriate for a statement of facts, which "shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." Rule 84.04(c).

While there are additional and significant violations of Rule 84.04 throughout Brown's briefing, we find the above violations in and of themselves require us to strike Brown's amended brief without reaching the merits, and therefore, we decline to address the additional deficiencies.

### Motion Taken with the Case

Cooper requests an award of attorney's fees in connection with responding to Brown's latest appeal. "Missouri has adopted the 'American Rule' which provides that litigants are generally required to bear the expense of their own attorney's fees absent statutory authorization or contractual agreement." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002). Cooper does not argue a contractual or statutory basis for the award of attorney's fees. Rather, Cooper cites Rule 84.19, which provides, "If

13

an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper."

"The purpose of sanctions under Rule 84.19 is two-fold: (1) to prevent congestion of appellate court dockets with meritless cases which, by their presence, contribute to delaying resolution of meritorious cases and (2) to compensate respondents for the expenses they incur in the course of defending these meritless appeals." *Capital One Bank v. Hardin*, 178 S.W.3d 565, 577 (Mo. App. W.D. 2005) (internal quotations omitted). Awarding damages for a frivolous appeal is a "drastic measure which the court reserves for those cases in which an appeal on its face is totally devoid of merit." *Id.* at 577-78. Frivolous appeals are determined on a case-by-case basis, and courts generally consider "whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *Vanschoiack v. Adkins*, 854 S.W.2d 432, 435 (Mo. App. W.D. 1993). "Additionally, although an inadequate brief does not render an appeal frivolous, such a brief considered together with the record may reflect that no 'fairly debatable' issue exists to justify an appeal." *Id.*; *see also, Capital One Bank*, 178 S.W.3d at 578 (holding failure to comply with Rule 84.04 is a "case-specific factor[]" of a frivolous appeal).

After careful consideration of Brown's brief as well as the history of this case, we conclude this case is appropriate for sanctions under Rule 84.19. First, Brown's non-compliance with Rule 84.04, after already having his brief stuck, is a case-specific factor in favor of sanctions. Due to Brown's inadequate briefing, Cooper and this Court have expended far more resources than necessary in an effort to decipher the record and

14

arguments attempted to be presented. Further, Brown has been litigating these issues for over a decade, and he has been litigating the exact issue he appears to be attempting to present in this appeal since the probate court issued its findings of fact and conclusions of law determining the trusts' distributions in 2015. Though extensive litigation alone is insufficient to justify sanctions, we recognize Brown's recent lawsuits against Brown-Thill and Cooper violate the vexatious litigation injunction issued by the probate court, which enjoined Brown from "pursuing further litigation against the Trustee of the Eugene D. Brown Trust, the Trustee of the Saurine L. Brown Trust, or any other individual or entity in connection with the disposition, accounting, or handling of the assets held by either the Eugene D. Brown Trust, the Saurine L. Brown Trust, and for such other relief as the Court deems just and equitable." Brown has already been held in contempt of the court which issued the injunction and has been sanctioned by the probate court for other meritless litigation. Moreover, we are persuaded by the federal court's warning to Brown in its Order dismissing Brown's motion to enforce arbitration that "further filings in violation of the Injunctive Order may subject him to sanctions."

Finally, recognizing Rule 84.19 serves to prevent congestion of appellate court dockets with meritless cases, we note that it appears Brown has no intention of ceasing the scorched earth litigation regarding the assets of this estate as he has filed an additional appeal to this Court in a parallel case, WD84347. Therefore, because Rule 84.19 is an equitable remedy, and all prior efforts to dissuade Brown from continuing to attempt to litigate issues that have been finally decided have proven ineffective, sanctions are appropriate in this matter. Accordingly, Cooper's request for attorney's fees pursuant to

15

Rule 84.19 is granted. "Although this court has the authority to allow and fix the amount of attorney fees on appeal, the power is exercised with caution. In most cases, the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fees requested." *Lake at Twelve Oaks Home Ass'n, Inc. v. Hausman,* 488 S.W.3d 190, 202 (Mo. App. W.D. 2016) (internal citations omitted). We caution Brown that further meritless litigation may subject him to additional sanctions, including but not limited to compensatory fines and/or coercive imprisonment. *Frantz v. Frantz,* 488 S.W.3d 167, 172-73 (Mo. App. E.D. 2016).

## Conclusion

For the foregoing reasons, Cooper's motion to strike Brown's amended appellate brief is sustained, the appeal is dismissed, and his request for attorney's fees is granted. We remand to the trial court for a determination of the appropriate award of attorney's fees against Brown to Cooper for this appeal.

_____

Gary D. Witt, Judge

All concur

16